KIRKLAND and others vs. TELLING and another.

*May 28 — June 23, 1880.*

EQUITY: *Reversal of judgment.*

Where the bill of exceptions in a suit in equity shows all the evidence offered, the judgment will not be reversed for errors in receiving or rejecting, or in considering or refusing to consider evidence, where it appears that no change in those respects would have been likely to affect, or could properly have affected, the result in the court below.

APPEAL from the Circuit Court for *Clark* County.

Action to set aside an assignment by plaintiffs of twenty-five shares of stock, of $100 each, in the Clark County Bank, of Neilsville in this state, and to obtain a reconveyance of said stock, and to recover the earnings thereof since December 20, 1875; or, in case a reconveyance could not be had, to recover the value of said stock as well as said earnings. The grounds on which this relief was asked were stated in the complaint substantially as follows: That about July 22, 1875, said bank was about to be, and it was thereafter, organized and incorporated under the laws of this state; that on that day the plaintiffs *Joseph F. Kirkland* and his son *Frank S. Kirkland* subscribed for said stock in their own name, and thereafter paid the full amount of such subscription to the bank, and were

Kirkland and others vs. Telling and another.

entitled to receive from it the certificates therefor; that the money so paid was the sole and separate property of the plaintiff *Maria S. Kirkland*, but the certificates were to be held in trust for her by the other plaintiffs above named, for the purpose of enabling them to retain their respective offices of vice-president and cashier of said bank and receive the salaries of said officers, each certificate entitling the holder to one vote in the stockholders' meetings; that after the incorporation and organization of the bank, and before any stock certificates were issued, to wit, on the 20th of December, 1875, at Neilsville, defendants procured the presence of the plaintiffs at the law office of O'Neill & Sheldon, defendant's attorneys, in the evening of said day, and then and there, well knowing the statement to be wholly untrue, stated to the plaintiff *Maria S. Kirkland*, and to the other plaintiffs, that said *Frank S. Kirkland*, the son of said *Joseph F.* and *Maria S. Kirkland*, was guilty of having stolen and embezzled about $3500 from defendants, who, in company with said *Frank S. Kirkland*, under the name and style of Telling, Wood & Co., had previously been engaged in a banking and exchange business at Neilsville, for which firm said *Frank S.* had acted as cashier, etc.; that defendants then and there, and their said attorneys, well knowing the statements to be false, repeatedly stated to plaintiffs that for such stealing and embezzlement *Frank S. Kirkland* was liable to be arrested at any time in a criminal action, and lodged in the common jail of said county, and on such charge to be convicted of said crime and sentenced to the state prison, etc., and that unless plaintiffs should then and there immediately assign and convey to defendants all their interest in said stock subscription and the money paid thereon and the certificates to be issued therefor, to make good in part to defendants the amount of said pretended embezzlement, they (defendants) would immediately procure a warrant for the arrest of said *Frank S. Kirkland* and place the same in the hands of an officer of the law, who, they then informed plaintiffs, was near at hand for

that purpose, and would have him arrested that night before he could get home, and lodged in said jail, and would cause him to be prosecuted for such pretended crime to the full extent of the law; that defendants then and there further informed plaintiffs, that if the latter would make the assignment above described, then defendants would not cause or suffer said *Frank S. Kirkland* to be so arrested or prosecuted; that said attorneys, O'Neill and Sheldon, who were present and participated in making the statements and threats as aforesaid, had prior to that time acted as attorneys for plaintiffs, and had counselled and advised them in all matters of business whenever plaintiffs desired legal advice, and at that time sustained the relation of attorneys and counsellors to them, as said attorneys and the defendants well knew, and that said attorneys, falsely pretending to be acting for the best interest of these plaintiffs, fraudulently and wrongfully counselled them to make such assignment; and that, in consequence of such statements and threats of defendants, and of their determined and threatening manner, and of the late hour of the night at which such occurrences took place (it being about the hour of ten), and of the false and fraudulent advice and statements of said attorneys, each of the plaintiffs became greatly excited and terrified, and especially the plaintiff *Maria S. Kirkland* became so greatly excited and alarmed as to be wholly disqualified to exercise her reason or judgment, and so that it was extremely dangerous to her health to remain in such state; that thereupon defendants produced the written assignment in question, and demanded that each of the plaintiffs should sign the same, and plaintiffs did so by reason of such excitement and alarm, and for the purpose of preventing such threatened arrest and prosecution, etc., and for no other reason; and that afterwards the stock certificates were issued directly to defendants, and the stock still stands in their name on the books of the bank, etc. There are further averments as to the present value of the stock, and the amount of the net earnings thereof.

Defendants answered that the assignment in question was made freely and voluntarily, for a good and valuable consideration; and they denied all the averments tending to show fraud or duress.

The evidence was very voluminous, and will not be stated. After it was all in, plaintiffs asked leave to amend their complaint so as to make it "correspond with the proof," by inserting the following averments: "That the plaintiff *Maria S. Kirkland* was induced to execute said assignment of her bank stock as aforesaid . . . in consequence of such statements and threats communicated to her by the plaintiffs *Joseph F.* and *Frank S. Kirkland*, to whom the same were made by defendants and their said attorneys, as hereinbefore mentioned, in connection with the other facts, statements and circumstances as hereinbefore set forth, believing that the statements and threats so communicated to her were then and there actually made by the defendants to the plaintiffs *Joseph F.* and *Frank S. Kirkland*, and that, in case of her refusal to assign such bank stock, such threats would be immediately put into execution." The court refused leave to so amend.

As to the litigated facts the court found, in substance, 1. That the money used in paying for the stock in question was obtained by a sale by *Frank S. Kirkland* of a note and mortgage for $3,000 given him by one Bedford to secure payment of purchase money for certain real estate in Michigan, which *Joseph F. Kirkland*, then being a bankrupt, had bought on credit and had procured to be conveyed to his wife, *Maria S. Kirkland*, but for which he had afterwards paid out of the profits of his business, in which he had "improved and used and worked" said real property. 2. That neither of the defendants, nor their attorneys above named, had, at any time prior to the settlement of December 20, 1875, any knowledge or information as to the ownership of the money paid into the bank for said bank stock, but believed it to be the property of *Joseph F.* and *Frank S. Kirkland*. 3. That upon said 20th

of December, *Frank S. Kirkland* and defendants dissolved a certain partnership in business in which they had been engaged about twenty months, and in which defendants furnished all the capital, while said *Frank S. Kirkland* conducted and managed the business, and had a one-third interest; that, upon the settlement of the partnership business on that day, *Frank S. Kirkland* was unable to account for about $6,000, and it was then and there found that he had misappropriated that amount of the capital stock of the firm, and he refused to account therefor; that upon the same day, for the purpose of making up a portion of said deficiency, plaintiffs executed and delivered to defendants the assignment here in question; and that the same was made freely and voluntarily by the plaintiffs, without any coërcion, fraud or undue influence exercised upon or against them by defendants or their attorneys, or any of them. 4. That prior to said settlement Messrs. O'Neill and Sheldon had not in any way been the attorneys or counsellors of the plaintiffs or of any of them.

Upon these findings the court held that defendants were entitled to a judgment dismissing the complaint and for their costs; and from the judgment entered accordingly, plaintiffs appealed.

The cause was submitted for the appellants on briefs of *Ring & Youmans.*

For the respondents there were briefs by *James O'Neill*, their attorney, and *R. J. MacBride*, of counsel, and oral argument by *J. C. Gregory.*

ORTON, J. We can find nothing in this cause to warrant a reversal of the judgment. It is a suit in equity, and all of the evidence fully reported, including that objected to by the respective parties; and the rulings of the court upon such objections become immaterial and unimportant. The only questions raised upon such objections are, whether the evidence so objected to ought to have been considered by the court, and

Kirkland and others vs. Telling and another.

whether, if so considered improperly, its effect would be, or should be, to change the findings made. Although the exceptions taken on behalf of the appellants may not be considered and passed upon strictly as in a case at law, it may not be improper to say that they appear to us not to be sustained; and we are quite sure that the evidence taken subject to the objections of the respective parties probably did not, and properly would not and ought not to, affect or change the result.

On the main issue, of the duress, threats and undue influence charged in the complaint, by which the assignment of the stock in the Clark County Bank is alleged to have been procured, the evidence is not only sharply and directly contradictory, but in our opinion greatly bears and preponderates against the allegations of the complaint. To settle and discharge the confessed defalcation of *Frank Kirkland* to the firm of Telling, Wood & Co., of which he was a member, and whose business he had alone managed, his father and mother would most naturally and reasonably be inclined of their own volition to make the assignment. He was the cashier of the new bank, and his father the vice-president, and by the arrangement and settlement proposed he was to be allowed to vote by or as a proxy upon the stock so assigned, in order to retain his place in the bank. We think the evidence quite conclusively shows that Telling and Wood, as well as the attorneys O'Neill and Sheldon, acted with great consideration and kindness, and most honorably, in the whole transaction; and their testimony was corroborated by Judge Dewhurst, and the strong circumstances of its probability. The amendment of the complaint, proposed to suit the evidence on behalf of the appellants, was quite immaterial, and may be treated as allowed without at all changing the result.

*By the Court.*— The judgment of the circuit court is affirmed, with costs.