LERDALL VS. THE CHARTER OAK LIFE INSURANCE COMPANY.

*February 10 — March 2, 1881.*

*Frivolous answer.*

1. The insolvency of an insurance company, and the agreement of a large part of its policy-holders to scale down the amount of their policies, is no defense as to any part of the amount due by the terms of the policy to one who has not agreed to scale the same; and an answer setting up such facts as a defense is frivolous.

2. Under our present statute, by which a party whose pleading is held to be frivolous, may still be allowed to plead over, a more stringent rule than that hitherto followed in this state, should be adopted in the future in determining the frivolousness of pleadings.

APPEAL from the Circuit Court for *Dane* County.

Action to recover the amount appearing due by the terms of an endowment policy of insurance issued by the defendant to the plaintiff June 3, 1867. The answer, by way of counter-claim, alleged, in effect, the act of incorporation by the legislature of Connecticut, containing a clause authorizing its alteration, amendment or repeal; and that in 1875 it was enacted that if at any time the assets of any company were less than its liabilities, the insurance commissioner might notify the company to cease issuing new policies or paying dividends to stock or policy holders, and, by a petition to a court or judge, wind up its affairs. It then averred the following facts: On the 14th of June, 1877, the defendant's assets being less than

its liabilities, the commissioner presented his petition to wind up the affairs of the company; but the petition was withdrawn, and on August 1, 1877, the management of the company was changed by the election of a new board of directors, who were unable to restore the company to a solvent condition, and therefore adopted the scheme of scaling the policies down to sixty per cent. of the amount insured, and issued a circular to the policy-holders asking them to scale or reduce their policies to sixty cents, and then found it difficult to pay even sixty per cent. of the policies as they became due. January 11, 1878, the commissioner again petitioned a judge and obtained an injunction restraining the company from disposing of any of its property except as therein mentioned, which injunction was modified March 18, 1878, so as to permit compromise, payment and purchase of such obligations as the directors should deem best, at a rate not exceeding sixty per cent. March 15, 1878, a new act was passed, changing the corporation from a stock to a mutual company, in case of acceptance by the policy-holders (a majority of whom did accept), and providing that all the assets then belonging to or thereafter acquired by said company should be appropriated to and used only for the benefit of the policy-holders, and be equitably distributed among the policy-holders only who should scale down their policies, as aforesaid, until such time as the amounts surrendered should be reimbursed to such policy-holders in full, in such equitable manner as might be determined by the directors, and that it should not be necessary for the old corporation to accept the act. After the passage and acceptance of said act, about ninety-four per cent. of the policy-holders scaled their policies down to the amount aforesaid, but the plaintiff refused so to do. Had the affairs of the company been wound up by a receiver, the policy-holders would not have received more than seventy-five per cent. Since the adoption of the mutual plan it had been paying sixty per cent. as policies became due, and was unable to pay

more. Before this suit, it had offered, and was still ready to pay, the respondent sixty per cent.; and it would be inequitable and unconscionable for it, acting as a trustee, to pay the respondent more than his just proportion of the assets. After these allegations, the answer prays that the respondent be enjoined from collecting more than sixty per cent., and that on payment of that amount all further prosecution should be restrained. This answer was stricken out by the circuit judge as frivolous, and the order thereon was affirmed at the circuit court; and from this last order defendant appealed.

For the appellant there was a brief by *Wilson Graham* and *Sloan, Stevens & Morris*, and oral argument by *Mr. Sloan*.

For the respondent there was a brief by *Vilas & Bryant*, and oral argument by *W. F. Vilas*.

CASSODAY, J. The counsel for the appellant insists that the answer sets up a good defense, or at least so far colorable as to require investigation, and therefore should not have been stricken out as frivolous, within the rule laid down by this court in *Cottrill v. Cramer*, 40 Wis., 555, and *Tolman v. Hanrahan*, 44 Wis., 133. The answer is voluminous, and it does require some investigation to understand the facts; but, when ascertained, it at once becomes obvious that it tenders no defense to the policy, nor any denial of the amount due thereon. In fact, it consists wholly of a counterclaim or cross action to restrain the plaintiff from taking judgment for any larger amount than certain other policy-holders have consented to accept. It is an attempt to force consent from the plaintiff to the alleged scheme of scaling. The reasons for this are stated at length, and consist of the troubles and financial embarrassments of the company, the commencement and withdrawal of proceedings to wind up its affairs, the change in the law governing it, its reörganization, its new management and new scheme for adjusting and settling its liabilities, and finally the granting of a preliminary injunction in an action pending in

a court of Connecticut. Whether such cross action could be maintained if the plaintiff had seized the property of the company, and was attempting to enforce collection out of such property or assets of the company, might possibly be a more serious question. But here the plaintiff is simply seeking a judgment for the amount due on the policy. The contract upon which he sues is confessedly legal and binding. The company, the other party to the contract, has not been discharged therefrom in whole nor in part by any court or officer of Connecticut, or any other state, much less by any bankrupt court. Upon what theory, then, can it reasonably be insisted that the plaintiff shall not be allowed to put his claim into judgment?

It has often been held that part payment of a debt is no consideration for an agreement not to enforce collection of the balance. *Harriman v. Harriman*, 12 Gray, 341; *Curran v. Rummell*, 118 Mass., 482; *Ryan v. Ward*, 48 N. Y., 204. But here it is claimed, in effect, that the insolvency of the company, and the agreement of some policy-holders to scale down the amount of their policies, is a good ground for compelling the plaintiff to scale down his. It is only necessary that the claim alleged in the answer should be stated in simple language, to render its frivolousness apparent. The question here presented does not involve the power of the state legislature to prescribe laws authorizing courts to discharge its own corporations or citizens, wholly or to a limited extent, from liabilities to foreign creditors; for no such discharge is here alleged. This is not a controversy between a trustee of the assets of the defendant company and the plaintiff as to the right to seize such trust estate. For the purpose of this case, it may be conceded that the legislature of Connecticut had full power over the charter of this company, and could alter, amend or repeal the same, and provide for winding up the corporation; and that foreign as well as domestic policy-holders were bound to submit to the proceedings for that pur-

pose regularly had. Hence the authorities cited by counsel seem to be wholly inapplicable to the question here involved. No reason seems to be given why the plaintiff is not entitled to judgment in this action, even if he should be unable to enforce collection of the whole, or be compelled to accept of a *pro rata* share of the assets of the company. Even if the bankrupt law were still in force, and the company were in bankruptcy, yet we apprehend that an answer of such bankrupt company, setting up such bankruptcy proceedings, would be no ground for enjoining a creditor of the bankrupt from obtaining judgment, so long as there was no attempt to interfere with the bankrupt estate. The reason for refusing to restrain the plaintiff here is much stronger. Nor can we say that this answer comes within that somewhat vague and shadowy class of pleadings which have been held bad on demurrer, and yet too good and intricate to be declared frivolous.

A frivolous pleading under the code was early defined by this court as follows: "It is a pleading interposed for delay, and its frivolous character indicates bad faith in the pleading. Hence the severity of the judgment on striking it off. The party who thus trifles with the administration of justice, and the necessary forms by which it is administered, forfeits all claims to the favor of the court. He is not entitled to amend or to plead over, as in case of error in pleading." *Farmers & Millers' Bank v. Sawyer*, 7 Wis., 383. The subsequent change of the statute — taking away the penalty for the apparent bad faith in the pleader, and securing to him the same favor with the court as one putting in a pleading in good faith, would seem to call for a more stringent rule in the examination of the alleged frivolous pleading than existed prior to such amendment. Under the statute, since the amendment, the party interposing the frivolous pleading is allowed, in the discretion of the court, to plead over, the same as in case of failure on demurrer. Section 2681, R. S. It would seem that a pleading entitled to such favor ought to be construed to include

something more than what would otherwise be regarded as a mere trifling with the court. The distinction, however, had not apparently been presented to this court, nor considered, until the recent case of *Diggle v. Boulden*, 48 Wis., 477, in which ORTON, J., said: "Since, by the present statute, in case of striking out a demurrer as frivolous, the court may allow the defendant to plead over within a limited time, on terms, when such an order is made, there can be no substantial distinction between striking out a demurrer as frivolous, and overruling it on argument; for the legal consequences are the same." Page 482. The logic of this statement is irresistible. Whether a pleading is manifestly untenable upon a bare inspection of the same, without argument or research, depends altogether upon the learning, experience and discrimination of the person who so inspects. To one mind the pleading may be clearly frivolous upon mere inspection, without argument or research, and yet to another, less learned upon the particular branch of the law involved, but more learned, perhaps, upon other branches, it might require both argument and research to come to the same conclusion. This distinction has no application to the case we are considering, for the answer here is clearly frivolous; but we have referred to the change in the statute because the court are of the opinion that in future a more stringent rule should be adopted as to frivolous pleadings.

*By the Court.*— The order of the circuit court is affirmed.