Herman v. Schlesinger, 114 Wis. 382.

HERMAN, Assignee, Appellant, vs. SCHLESINGER, Respondent.

*April 22—May 13, 1902.*

*Attorney and client: Employment by assignee: Privileged communications: Waiver: Depositions: Appeal: Immaterial errors: Accord and satisfaction: Consideration.*

1. An attorney employed by a person acting in a representative capacity, such as an assignee for the benefit of creditors, stands for the assignee or other trustee and not for the beneficiaries, and sustains substantially the same relation to his client as he would if the representative character were absent. The successor of the assignee or other trustee, therefore, cannot waive the privilege of his predecessor in regard to communications made by the latter to the attorney while he was in office.

2. Where an attorney serves a client in his professional capacity in the making and the reduction to writing of an agreement between the client and a third person, the client does not, by procuring the attorney to sign as a subscribing witness, waive his privilege of secrecy in respect to confidential communications made during the preparation of the instrument.

3. Where an attorney's services in a transaction are rendered to several persons, confidential communications to him in regard thereto cannot properly be disclosed unless all join in consenting to such disclosure.

4. The privileged communication between attorney and client recognized by sec. 4076, Stats. 1898, extends only to those communications made by the latter to the former which are of a confidential character and are made for the purpose of enabling the attorney to serve the client, and to the legal advice given in respect to such communication, and does not extend to communications between the attorney and a third person in the transaction of the client's business.

5. A witness cannot be compelled to disclose communications made to his attorney which would be privileged were the attorney under examination as a witness, but such privilege does not extend so far as to warrant the court in excluding a question on cross-examination as to whether, in the preparation of a cause for trial, the party was interrogated as to his knowledge respecting the matters in controversy and the questions and answers thereto reduced to writing for the purpose of enabling the attorney to know what his client might be expected to testify to.

6. Under sec. 4090, Stats. 1898, depositions may be read in evidence only upon condition that they have been filed with the clerk of the court and the other party notified thereof before the commencement of the trial.

7. Errors in the reception or rejection of evidence in an equity case are not deemed prejudicial in the absence of reasonable ground to believe that if the improper evidence had not been considered, and the proper evidence rejected had been admitted and given due weight, the result might probably have been different.

8. Either the conveyance by a debtor of an absolute title to property held collaterally, or a waiver of his right to the benefit of the federal bankrupt laws, is a sufficient consideration to support a settlement of the indebtedness upon payment of a part only of the amount due.

APPEAL from a judgment of the circuit court for Milwaukee county: W. C. SILVERTHORN, Judge. *Affirmed.*

Action to set aside a release of indebtedness on the ground of fraud. The substance of the complaint is as follows: June 1, 1893, the Plankinton Bank, a banking corporation located in the city of Milwaukee, Wisconsin, was insolvent and made a voluntary assignment for the benefit of its cred-

itors to William Plankinton, who accepted the trust, entered
upon the discharge thereof, and continued in office till July
18, 1899.   He was then succeeded by Irving M. Bean, who
acted as assignee till December 20, 1899, when he was suc-
ceeded by the plaintiff, *Henry Herman,* who has since been
the assignee and brings this action as such.   At the time of
the assignment defendant was indebted to the assignor in
the sum of $78,878.32 for principal and a further sum for
interest thereon.   On and prior to April 9, 1899, defendant
represented to the assignee, William Plankinton, that he
was not possessed of any property whatever out of which
any part of his indebtedness could be collected, and that it
was for the best interests of the creditors of the insolvent
bank that his indebtedness to it, then aggregating for prin-
cipal and interest more than $168,000, should be released in
consideration of the payment by him to the assignee of
$1,486, one half in sixty days and one half in eight months,
and caused said assignee to make like representations to the
circuit judge having judicial charge of the assignment pro-
ceedings.   Such representations were false and fraudulent
and were made to the assignee and caused to be repeated to
the said circuit judge for the purpose of obtaining a release
of defendant's said indebtedness, for the trifling sum of
$1,486, thereby cheating and defrauding those interested in
the assigned estate.   The circuit judge was misled, by said
false and fraudulent representations, into making an order
authorizing the assignee to accept from the defendant the
sum of $1,486, one half in sixty days and one half in eight
months, and in consideration thereof to release all his said
indebtedness, and such authority was acted upon to its full
extent.   Defendant refuses to consent to a rescission of said
fraudulent transaction or to accept a return to him of the
$1,486 paid as aforesaid, or to respond to the assignee for the
benefit of those interested in the assigned estate to the
amount due from him as aforesaid, or any part thereof,

though he is amply able to do so. The complaint closed with a prayer for appropriate relief.

The answer put in issue all the allegations of the complaint in regard to wrongdoing on defendant's part. It admitted the making of the assignment, the succession of plaintiff as assignee, the existence of large indebtedness to the assignee at the time of said assignment, and its subsequent release in consideration of .$1,486, as stated in the complaint; but alleged that all representations made to the assignee and repeated to the circuit judge, upon the faith of which the settlement was authorized and made, were true in point of fact. The answer further alleged that in March, 1899, defendant was indebted to various persons in sums aggregating about $3,000,000; that he entered into agreements for the settlement of substantially all his indebtedness not represented by assignees and receivers prior to the transaction in question, on the same basis as that accepted by the assignee of the Plankinton Bank; that after securing such agreements he acquainted such assignee therewith and offered to make a like settlement with him, stating, as the facts were, that he was insolvent, that he was indebted in the sum above indicated, that he had no property whatever out of which any part thereof could be collected, and that unless he was permitted to settle the same in the manner suggested he would take the benefit of the bankruptcy laws; that his offer was to pay the assignee, in consideration of a release of all his indebtedness to'the assignee, and that of the firm of Schlesinger Bros., of which he was a member, and also that of Adolph Schlesinger, $1,486, and to convey to the assignee absolute title to some collateral held by the latter to secure the payment of said indebtedness; that upon due consideration, by such assignee and the circuit judge having judicial charge of the assignment proceedings, of the whole situation, including the opportunity

and right of defendant to take the benefit of the bankruptcy laws whereby his indebtedness to the estate might be wholly lost to it, the proposition for settlement was authorized by the circuit court, and was duly accepted and fully consummated.

The court decided the controverted issues and defensive matters pleaded, upon the evidence produced, in effect as follows:

(1) On or about April 1, 1899, defendant's indebtedness to the assignee of the Plankinton Bank, being still wholly unsettled, and amounting to $123,878 and interest, his total indebtedness to all his creditors being about $3,000,000, and he having already secured agreements for settlements covering a large part thereof for one and one fifth per cent. of the amounts due to his creditors respectively, he proposed to pay, for a release of all his indebtedness to such assignee, $743 in sixty days and a like sum in eight months, with interest thereon at six per cent. per annum, that being substantially the basis of settlement agreed upon with other creditors, and to release to such assignee all collaterals in his hands, held to secure the payment of such indebtedness, and at the same time satisfied such assignee that he was insolvent, that he was indebted in the sum of about $3,000,000, that he was unable to pay any substantial part thereof, and that if the offer of settlement was not accepted he would take the benefit of the federal bankruptcy laws.

(2) April 7th, the assignee, by a written petition for judicial advice, submitted the offer of settlement to the circuit judge, accompanied by a statement, that he had made diligent effort to collect the indebtedness owing him by defendant; that he had been unable to collect any part thereof; that neither the defendant nor the firm of Schlesinger Bros., nor any member thereof, possessed any property available for the payment of their liabilities; that their debts exceeded $3,000,000; that many of their principal creditors

had agreed to submit to a settlement of their claims, not more favorable than that offered to him; and that unless such offer was accepted there was a probability that the debtors would take the benefit of the bankruptcy laws, in which case no part of their said indebtedness would be realized. In response to such petition an order was entered by the court authorizing the assignee to accept such offer of settlement, whereupon a contract of settlement was made between him and the defendant, embodying the terms thereof.

(3) The sum stipulated to be paid to the assignee was paid in due time and the contract of settlement was fully carried out upon both sides.

(4)· At the time said settlement was made defendant was insolvent, his indebtedness amounted to some $3,000,000, and neither he nor any other person liable for the released indebtedness had any property out of which any part thereof could be collected.

· (5) No false statements were made by defendant to secure the settlement, and in view of all the circumstances it was just to those interested in the assigned estate.

Upon such findings judgment was ordered dismissing the complaint with costs, and was entered accordingly.

*M. M. Riley, Moritz Wittig,* and *J. B. Doe,* for the appellant.

For the respondent there were briefs by *Ryan, Ogden & Bottum,* and oral argument by *Hugh Ryan.*

MARSHALL, J. Fifty-three assignments of error are presented for consideration. The appeal does not seem to call for a discussion of them in detail. None of them has been overlooked. Such will receive special attention in this opinion as are deemed of sufficient importance to merit it.

1. Assignments of error 1 to 6, inclusive, relate to rulings upon the trial sustaining claims of privilege made by Mr. James G. Flanders, from testifying to matters in respect to

which he was interrogated, upon the ground that whatever knowledge he had on the subjects was acquired in his professional employment by the parties to the transactions. The exceptions to such rulings present for consideration several propositions:

(a) Can the successor of a person acting in a representative capacity, such as an assignee, waive the privilege of his predecessor as to secrecy in regard to communications made by the latter to his attorney while he was in office? The attorney for an assignee, administrator, or other person similarly situated, is his private employee. At law the attorney must look to such person for his pay, and the latter must rely for reimbursement for his outlay in that regard upon the allowance of his account by the court having judicial charge of the matter. The attorney does not, as counsel for appellant seem to · think, stand for the beneficiaries of the trust. He stands for the trustee. He is the latter's personal representative. The trust estate is not directly chargeable with the attorney's claim for compensation. The professional relation existing between him and the trustee is substantially the same as it would be if the representative character of the latter were absent. *Miller v. Tracy,* 86 Wis. 330, 333, 56 N. W. 866; *Thomas v. Moore,* 52 Ohio St. 200, 39 N. E. 803; *Platt v. Platt,* 105 N. Y. 488, 501, 12 N. E. 22. Upon the trustee going out of office and being succeeded by another, there is no devolution of the liability of the former upon the latter for the expenses of the former's attorney. The outgoing trustee must account to his successor, or as the court may direct. His attorney and his successor do not, by reason of the succession, enter into the relation of attorney and client as to past transactions or any other. It follows as a matter of course that the new trustee has no better right than a stranger to represent his predecessor as to waiving the latter's right to

have his former professional employee remain silent as to matters communicated to him under the veil of privilege.

(b) Does a person, by procuring his attorney to sign, as a subscribing witness, an instrument evidencing an agreement or transaction between such person and a third party, in the making of which and reduction thereof to writing such attorney served such person in his professional capacity, waive the common-law privilege declared by sec. 4076, Stats. 1898, in respect to the transaction? Counsel point with much confidence to several authorities to support the affirmative of that proposition, but we are unable to discover any good ground for such confidence. *Doheny v. Lacy,* 168 N. Y. 213, 61 N. E. 255, is one of counsel's supposed supports. There the ruling that the privilege of secrecy was waived was not put on the ground, merely, that the attorney signed the instrument as a subscribing witness, but on the ground that the communications between attorney and client were not of a confidential character, as shown by the circumstance that they were made openly in the presence of third persons. No intimation appears in the opinion of the court that a mere witnessing of an instrument, of itself, will raise the veil of secrecy between attorney and client in respect to legal advice of attorney to client or communications by the latter to the former to secure such advice. It is suggested that if an attorney acts as such in the preparation of an instrument for both parties thereto, no other person having knowledge of the transaction, each of the parties is entitled to enforce the privilege of secrecy as to disclosures for the benefit of third persons, but not as relates to matters between themselves. Further, that the mere calling of an attorney to witness the execution of an instrument does not close his mouth as to what he sees and hears in regard to the matter to which he thereby becomes, in a sense, a party. *Coveney v. Tannahill,* 1 Hill, 33, 40. That is upon the ground that the relation of attorney and

client is not involved in such a transaction. Counsel cite
1 Greenl. Ev. § 244. That is only to the effect that if an
attorney, employed to prepare an instrument, when his labor
in that regard is concluded, assumes the character of a sub-
scribing witness to the paper at the request of his client,
such circumstance will waive the privilege of secrecy as to
what a subscribing witness may be called to prove as such,
but not as to confidential communications made during the
preparation of the instrument. The text is supported by
*In re Will of Coleman,* 111 N. Y. 220, 226, 19 N. E. 71,
where it was held that if a testator procures the attorney
who prepares his will to witness the execution thereof, he
impliedly waives the privilege of secrecy between attorney
and client as to those matters which such a witness is ex-
pected to testify to after the death of the testator in order
that the will may be effective. But it was said that the
veil of secrecy is not thereby lifted so as to permit the at-
torney to disclose communications made to him in the course
of the preparation of the will in order to enable him to re-
duce the wishes of the testator to writing. That is element-
ary. Authority to the same effect may be found in the
reported decisions of this court. *McMaster v. Scriven,* 85
Wis. 162, 168, 55 N. W. 149.

The extent to which the authority goes is clearly indizated
by the following language used by Mr. Justice PINNEY in
the last case cited, speaking of the circumstance of the
attorney acting as a subscribing witness to the will prepared
by him: "This must be held to be a waiver of objection to
his competency, so as to leave the witness free to perform
the duties of the position." The privilege of secrecy between
attorney and client is grounded in the idea that communica-
tions made by the latter to the former are of a confidential
nature and must necessarily be such in order to enable the
attorney to properly serve his client. The rule does not
extend further than the reason thereof. Keeping that in

mind it is easy to see that none of the authorities cited by counsel is in their favor under the facts of this case. The attorney whose testimony was desired here was not merely called in to act as a subscribing witness to the instrument. The testimony had no relation to the mere execution of the paper. It did not relate to matters which occurred publicly, nor was the disclosure sought as between two persons for both of whom the attorney acted in the preparation of the paper. *Britton v. Lorenz,* 45 N. Y. 51; *Hurlburt v. Hurlburt,* 128 N. Y. 420, 28 N. E. 651. Here was the ordinary case of an attorney employed as a confidential adviser in the preparation of an instrument to which he became a subscribing witness, and subsequently, in an action between other parties, he was called as a witness and requested to make disclosures in respect to the matter. He testified freely to the circumstance of his witnessing the execution of the paper, but insisted upon his client's privilege of secrecy as to matters which came to his knowledge from his client in the preparation of the paper. From what has been said it seems clear that the court properly sustained the claim of privilege.

(c) If an attorney acts in his professional capacity for two persons, does the circumstance that one of them waives the privilege of secrecy affect such privilege as to the other? It seems that Mr. Flanders performed services for the defendant and his wife. He was asked, as a witness, to disclose matters in respect thereto which came to him under the veil of secrecy as between attorney and client. The privilege was waived as to defendant, but the attorney, deeming himself in duty bound to assert that of Mrs. Schlesinger, acted accordingly, and he was sustained by the court. What has been said indicates that the ruling was right. When an attorney's services in a transaction are rendered to several persons, confidential communications to him in regard thereto, in which all such persons are interested, cannot be

properly disclosed unless all join in consenting thereto. The rule in that regard has been carried so far as to preclude an attorney from divulging matters confidentially communicated to him by a firm without the individual consent of every member thereof. *People v. Barker,* 56 Ill. 299. The reason for that is obvious. The privilege of secrecy is purely a personal right. When it affects several persons there is no way by which all can be protected in respect thereto other than by holding that all must join in lifting the veil of silence, or it must remain a secure cover for those things which it would obscure if they related to a single person only.

(d) If a person employs an attorney to act in his professional capacity in a transaction between such person and another, is such attorney privileged from disclosing the communications which pass between him and such other in regard to such employment? Counsel for appellant do not discuss this branch of the case exactly as it appears in the record. One would suppose from what is said in regard thereto in counsel's brief, that the attorney acted in the matter, in respect to which he was interrogated, as a mere agent. He testified to the contrary most distinctly, over and over again, saying that he was not an agent at the time of and in the transaction in question, in any sense whatever, but that he acted in the performance of his duty as a legal adviser to his clients. On that testimony, in part, the trial court acted in deciding the question of competency; so whether the ruling of the court was right is involved in a decision of the proposition we have stated. The privilege of secrecy, as to transactions between attorney and client, is limited by the statute to communications made by the latter to the former, and to the former's advice thereon, in the course of his professional employment. We are unable to see how communications between an attorney and a person not his client, while conducting a business matter with such

person for his client, whether he is acting professionally at
the time or not, can be classed with those named in the
statute.  A communication made by a person to his attorney
to be and in fact communicated by him to another, is not
privileged, because, in the very nature of things, it is not
confidential in character.  The very purpose thereof is to
have the communication repeated to one who is under no
obligation not to divulge it.  *Henderson v. Terry,* 62 Tex.
281.  That being the case, manifestly a reply to such a com-
munication must be governed by the same rule, and so must
also other communications between the attorney and the
third person in case of negotiations between the two.

It was claimed on the trial that the statutory privilege of
secrecy includes all communications made to the attorney
by reason of his professional employment, whether by his
client or by third persons while he is in pursuit of his
client's business, and also to all knowledge obtained by him,
whether from his client or otherwise, while in pursuit of the
latter's business; and the court so ruled, excluding evidence
of negotiations conducted for the defendant and his wife
with third persons in respect to a matter material to the
issues of the case.  Manifestly, the language of the statute
does not justify such ruling.  Communications made to an
attorney by a person while the attorney is dealing with such
person as agent, merely, or agent and attorney, or attorney
and counselor, of another, are in no sense communications
made by the latter to such attorney, of a confidential char-
acter or otherwise.  Neither the letter nor the spirit of the
statute, nor any decision made under it or any similar statute
or the common law, of which the statute is merely declara-
tory, goes to that extent, so far as we are advised.  In
*Koeber v. Somers,* 108 Wis. 497, 84 N. W. 991, this court,
speaking by Mr. Justice DODGE, held that the privilege of
secrecy as between attorney and client, recognized by the
statute, extends only to those communications made by the

latter to the former which are of a confidential character and made for the purpose of enabling the attorney to serve his client, and the legal advice given to the client in response to such communications; that when the attorney goes forth to perform a service for his client, with a third person, communications between such third person and the attorney are not within the privilege of secrecy. However, we are unable to perceive that the erroneous ruling of the court was prejudicial to appellant. The transactions which the attorney was requested to disclose, and substantially all the details thereof, were, either directly or by reasonable inference, established on the trial.

2. Assignments of error 13 and 14 relate to a ruling excusing respondent from answering on cross-examination as to whether, in the preparation of the case for trial, he was not examined by his attorneys and his testimony to be given upon the stand reduced to questions and answers, upon the ground that he was privileged from answering under the rule allowing secrecy as between attorney and client. The circuit court seems to have supposed that such privilege extended to everything that occurred between respondent and his attorney respecting the subject of the business of the professional employment. That is wrong. On the other hand counsel for appellant seem to have the idea that, while respondent was privileged to have his attorney not make disclosures respecting certain confidential communications between them, without his permission, the way was open to compel him, as a witness, to make such disclosures. That is wrong. Professional services of attorneys are essential to the orderly and efficient administration of justice, and, as a rule, to the safe conduct of legal business of any kind. Secrecy as to communications between attorney and client, to a certain extent, is required in order to properly effectuate the purpose of the relation between the two. The foundation principle of the rule in that regard suggests, on a moment's reflection, that

what the attorney ought not to disclose without his client's permission, the latter ought not to be compelled to disclose. The law is in harmony therewith. It makes the client complete master of the situation, if his attorney properly performs his duty. *Hemenway v. Smith,* 28 Vt. 701; *Barker v. Kuhn,* 38 Iowa, 392; *Duttenhofer v. State,* 34 Ohio St. 91; 1 Whart. Ev. § 583; Steph. Dig. Ev. art. 115. However, the rule extends only to the communications mentioned in sec. 4076, Stats. 1898, not to a mere statement as to whether, in the preparation of a cause for trial, a party was interrogated as to his knowledge respecting the matters involved, and the questions and answers thereto reduced to writing; enabling the attorney to know what his client might be expected to testify to. The evidence rejected should have been allowed. It had some bearing on the credibility of respondent's evidence. It was not admissible for any other purpose. But we are satisfied that the mere fact, if it be a fact, that respondent was carefully interrogated by his counsel before going upon the stand, the questions propounded and the witness's answers being reduced to writing, would not have affected the result of the trial, if proof thereof had been permitted. The cause turned on facts, of the existence of which the court was evidently satisfied quite independently of any testimony by respondent.

3. Errors 20 to 23, inclusive, relate to refusals by the court to permit the use in evidence of a deposition taken and filed during the progress of the trial. That ruling was in strict accord with the statute, which allows the reading of a deposition in evidence only upon condition that it shall have been filed with the clerk of the court and the other party notified thereof before the commencement of the trial. Sec. 4090, Stats. 1898.

4. A considerable number of assignments of error relate to the admission of evidence over objections by counsel for appellant, and to the rejection of evidence offered by them

upon objections made by respondent, and others to refusals by the court to compel the production of books and papers for use upon the trial or for inspection by appellant's counsel in aid of the presentation of appellant's case or of discrediting that of respondent. Much time might be spent in discussing such assignments of error in detail, but it seems neither necessary nor advisable to do so. Errors in the reception or rejection of evidence in an equity case are not deemed prejudicial in the absence of reasonable ground to believe that if the improper evidence had not been considered, and the proper evidence rejected had been admitted and given due weight, the result might probably have been different. *Kirkland v. Telling,* 49 Wis. 634, 6 N. W. 361. Under that rule it is considered that the errors alleged, to which this paragraph is devoted, regardless of whether they are well assigned or not, were not prejudicial to the rights of appellant. If all the evidence admitted over objection had been rejected, and all the evidence offered by appellant's counsel which was rejected had been received and had shown all that counsel for appellant suggest would or might have been shown thereby, the findings of the court on matters of fact, in all reasonable probability, would not have been different than those we find in the record. Still the situation would have remained unaffected—which the trial court undoubtedly believed was the real truth of the matter,—that all the property claimed by appellant to have belonged to respondent and claimed by him to have been the property of his wife, in the latter part of 1894—consisting of the capital stock of a corporation located in Mexico called the Concheno Company—long prior to the settlement challenged and when it was perfectly proper for respondent or his wife, whoever was the owner thereof, to sell it, was conveyed, one half to Corrigan, Ives & Co., and the other half to Henry Stern, the father of respondent's wife, in payment of indebtedness owing to them by respondent; that subsequently Stern ex-

changed his stock with Corrigan, McKinney & Co., for property which he subsequently, and long before the settlement in question, gave to his daughter subject to a claim thereon for $23,000, and that the same became the original assets of the Dunn Iron Mining Company, the stock of which was the property of Mrs. Schlesinger by the same right as she took title to such assets from her father; that later the Dunn Iron Mining Company, without any change in the ownership of the stock and without the use of any capital other than that originally invested therein and the increase thereof, acquired other mining interests, the property, in the whole, constituting that regarded by appellant's counsel as the property of respondent at the time of the settlement complained of, with Plankinton, assignee. In that view, clearly, there was no admission or rejection of evidence which, by any reasonable stretch of the imagination, can be said to have probably prejudiced appellant. If Stern acquired, legitimately, ownership of one half of the stock of the Concheno mine—and the trial court in effect so found—it is immaterial, so far as relates to ultimate facts, whether the stock of the initial corporation formed in Milwaukee, called the Standard Metal Company, the records of which appellant's counsel sought to have produced in evidence and failed, of which complaint is made, or the stock of the Concheno mine, into which the property of the Standard Metal Company was merged, was property of respondent or that of his wife. In that view, also, it was entirely immaterial to the issues of this case, what the value of the property was, possessed by respondent's wife at the time of the settlement. So, failure of opportunity to make proof thereof to the satisfaction of appellant, by reason of the adverse rulings of the court of which complaint is made, was nonprejudicial.

5. The other assignments of error touching matters within the issues made by the pleadings, meriting attention, relate to whether the findings of fact are supported by the evidence.

That question turns, mainly, on whether the property derived from the transfer by Stern to his daughter, as before stated, belonged to her or to respondent at the time of the settlement in question. If it belonged to the latter, then he possessed, at the time of such settlement, a fortune out of which he might have paid a large proportion, if not all, of the indebtedness to Plankinton, assignee, and he perpetrated a fraud upon such assignee and thereby wrongfully secured the settlement complained of. If the transfer by Stern to Mrs. Schlesinger was a legitimate transaction, then the evidence does not show that the representations, by means of which the settlement with the assignee was secured, were untrue. The trial court, as before indicated, found in favor of respondent on that subject. It would not follow that such decision is wrong if we were to determine that the stock of the Standard Metal Company, through which it is claimed respondent commenced to do business after his failure in 1893, was his property, and that the stock of the Concheno mine belonged to him when the same was turned out in payment of his indebtedness to Corrigan, Ives & Co. and to Stern. The precise manner in which the trial court reached the conclusions on matters of fact does not appear. We should hesitate on the record before us to disturb the judgment if the turning question were whether the stock of the Standard Metal Company, and that of the Concheno mine, belonged to respondent. Viewing the decision as resting solely on whether the property given by Stern to Mrs. Schlesinger was his to bestow in that way, the creditors of respondent having at the time of such bestowal no right thereto, there is far too much evidence in the record to sustain it to warrant us in coming to the conclusion that it is against the clear preponderance of the evidence. It would take much time to go through the record in detail in an attempt to thoroughly discuss the evidence and thereby justify the trial court's findings. It is not customary to do that in a case like this

where a conclusion is reached that the judgment must be affirmed. Such a discussion really serves no purpose except to satisfy counsel for the losing party that the evidence has been carefully considered in all its bearings. The preservation of such discussions in the printed records is not helpful, and it is believed that, as a rule, the better course is to omit them. Ordinarily counsel for the losing party, who have sufficient confidence in their case to take the chances of an appeal to this court on mere questions of fact, are no better satisfied that they are wrong, and not the trial court, or, at best, satisfied that from the standpoint of the reviewing court, having only the record before it, it cannot be said that the findings of the trial court are against the clear preponderance of the evidence, after reading a laborious discussion upon appeal in justification of the conclusion there reached, than they were before. The appearance of a decision, particularly as to mere matters of fact, depends largely upon the standpoint from which the view is taken. From that of partisanship occupied by the interested attorney, it looks far different than from that of a court. He who looks from the former position is bent on securing a favorable result for his client. In that situation the faculties brought into use in searching for truth for the sake of truth are not necessarily active. He who views a decision from the non-partisan, nonprejudiced standpoint of the court is moved only by a desire to discover the right, regardless of effects and consequences which cannot be avoided and the right prevail. From the latter position we have carefully examined the evidence in this case. Counsel must take that assurance in lieu of an extended discussion of the evidence. The result of our labor is that we are unable to find justification for disturbing the findings of the court.

6. The question is presented, somewhat outside the cause of action set forth in the complaint, of whether the settlement complained of is void for want of consideration. Coun-

sel for respondent make no objection to the proposition being considered, and we will not suggest any that might have been put forward if such exist. It is elementary that the mere acceptance, by a single creditor, of a part of an undisputed claim in settlement of the whole, does not preclude a subsequent, legitimate demand for the balance thereof. *Continental Nat. Bank v. McGeoch,* 92 Wis. 286, 310, 66 N. W. 606; *Otto v. Klauber,* 23 Wis. 471; *Lathrop v. Knapp,* 27 Wis. 214, 225; *Davenport v. First Cong. Society,* 33 Wis. 387, 391; *Lerdall v. Charter Oak L. Ins. Co.* 51 Wis. 426, 429, 8 N. W. 280. It is also elementary that where a creditor obtains some advantage, or promise thereof, that may possibly be realized in addition to the part payment by the debtor, for a release of the latter's indebtedness, there is a good accord and satisfaction, effectually extinguishing the same, regardless of how small the amount actually paid upon it may be. *Continental Nat. Bank v. McGeoch, supra.* Applying that to this case, the settlement in controversy cannot be impeached for want of consideration. The contract of settlement was obviously drawn with care, having in mind the legal essentials thereof in order to preclude any subsequent claim against respondent for any further sum upon the indebtedness. Absolute title to property held by the assignee as security only, was conveyed to him, and the right of respondent to the benefit of the federal bankruptcy laws was waived in the former's favor. There was some advantage involved in those concessions. Absolute ownership of the collateral in place of a holding thereof as security was of itself an advantage. Admit that it was of slight, almost trifling character, yet it must be held to have been sufficient to make a good accord and satisfaction. Independently of authority, it would seem that the giving up of the valuable right of respondent to the benefit of the federal bankruptcy laws was a substantial consideration and sufficient to support the settlement. Counsel for respondent cite us to *Hinckley v.*

*Arey,* 27 Me. 362, where it was so decided. The rigorous rule of the common law, permitting a person to receive part of an undisputed, presently due indebtedness, pretending to accept the same in satisfaction of the whole indebtedness, the debtor parting with the amount paid with that understanding, and then change front and sue for the balance of such indebtedness on the ground that the release thereof was void for want of consideration, is so little favored by courts that it is commonly held not to apply where anything, whether of advantage to the creditor or disadvantage to the debtor, can be reasonably said to stand for that part of the indebtedness not measured by an equivalent in money actually paid to the creditor. The common-law rule has been abolished by statute in Alabama, Georgia, Maine, North Carolina, Tennessee and Virginia, and perhaps some other states. In Connecticut it has not been recognized by the courts. *Ford v. Hubinger,* 64 Conn. 129, 29 Atl. 129. In the other states where no statute exists to the contrary, it is believed the rule is adhered to in form, but there is apparently a progressive disposition to disregard it in spirit. It is said that there is sufficient consideration moving with the part payment to release an indebtedness to take the transaction out of the common-law rule, if the debtor does anything which he is not bound by law to do, or omits to do anything which he has a right to do, to the advantage, in any appreciable degree, of the creditor, or the disadvantage of himself; that the consideration, in addition to money paid, "may consist of anything which might be a burden to the one party or benefit to the other." *Watson v. Elliott,* 57 N. H. 511; *Jaffray v. Davis,* 124 N. Y. 164, 26 N. E. 351; *Maddux v. Bevan,* 39 Md. 485.

Nothing further, it seems, need be said in disposing of this case.

*By the Court.*—The judgment appealed from is affirmed.