FISHER SUPPLY COMPANY, Appellant, v. NORTHWESTERN GRAVEL COMPANY, Appellee.

No. 41491.

JULY 18, 1933.

REHEARING DENIED OCTOBER 20, 1933.

Guy A. Miller, and Robert Elmer Long, for appellant.

Malcolm Currie, and George E. Hise, for appellee.

MITCHELL, J.—The appellee company, in July of 1927, found itself embarrassed for lack of cash, and some creditors were threatening suit and receivership. The appellee company determined to submit to its creditors a proposition which it hoped would terminate the litigation pending between it and a few of its creditors and would accomplish an extension of time of payment to its creditors. On July 11, 1927, the appellee company issued a letter substantially as follows:

"To the Creditors of Northwestern Gravel Company:

"Ten Thousand dollars ($10,000) of this Company's first mortgage bonds came due January 1st, 1927, and semi-annual interest on the $40,000 total outstanding issue came due July 1st, 1927 —all of which remains unpaid. In order to avoid threatened Receivership and foreclosure proceedings under the Company's mortgage it is necessary to secure extensions in the time of payment of our past due bonded and general indebtedness.

"We propose to pay at this time the July 1st interest due on the bonds, the holders of the $10,000 bonds due last January agreeing to extend the time of payment to December 20th, 1927.

"We propose to pay at this time interest for six months at 6% per annum from January 1st, 1927, on our general indebtedness provided the general creditors will extend their claims to December 20th, next.

"On December 20th, 1927, we will first pay and cancel the $10,000 bonds which became due last January reducing the total outstanding bonds to $30,000.00.

"On December 20th, 1927, we will pay interest to general creditors for the six months ended December 30th and pay 25% on the principal of their claims. It is understood that the payment of general creditors' claims shall be made pro-rata. The contracts and orders for our material now being filled and the actual business

in sight in the Company's territory for the balance of this year are such as in our judgment warrant us in saying that the balance of our general claims remaining unpaid after January 1st, 1928, can be paid within a reasonable time thereafter with interest at 6% in the meantime, payable semi-annually.

"The Gravel Company will conduct its operations during 1927 on a cash basis settling its current accounts monthly without adding to the present outstanding indebtedness.

-"Mr. A. C. Nelson, of Des Moines, former Bank cashier, will represent the creditors of both classes in handling the Company funds during the extension period.

"Northwestern Gravel Company,

"By H. J. Blink, Sec'y-Treas.

"We agree to the extension in time of payment of our claim against the Northwestern Gravel Company as set out above.

"_____ $_____

"_____ $_____

"_____ $_____ "

The appellant, the Fisher Supply Company, had a claim against the appellee in the amount of $228.30, and the Iowa Mutual Liability Insurance Company also had a claim against the appellee in a substantial amount, which claim has been duly assigned by the Iowa Mutual Liability Insurance Company to the appellant. A Mr. Rawson was directed by the appellee company to secure from the creditors the extension agreement contained in Exhibit B, the letter of July 11, 1927. Mr. Rawson went around to see the various creditors and urged them to sign the agreement Exhibit B. He called upon the Fisher Supply Company, and also upon the Iowa Mutual Liability Insurance Company. He showed both of these creditors the letter of July 11, 1927, the lists of creditors, the balance sheet, and the prospectus for the remainder of the year 1927. The Fisher Supply Company signed the agreement, and later the Iowa Mutual Liability Insurance Company signed the agreement of July 11, 1927, but before the Iowa Mutual Liability Insurance Company would sign it they insisted that payment of $200 be made upon their account. This payment was made by the appellee company. In November, 1927, the appellee company sent a letter to its creditors, including the Fisher Supply Company and the Iowa Mutual Liability Insurance Company, offering 75 per cent cash in full settlement of their claims. Both the Fisher Supply Company and the Iowa Mutual

Liability Insurance Company accepted the agreement to take 75 per cent in cash in full settlement of their claims, and they received checks for 75 per cent of the amount of their claims against the appellee company.

It is the claim of the appellant that the agreement entered into with the appellee company on July 11, 1927, was a composition agreement and that the appellant signed said composition agreement upon the representations made to them by Mr. Rawson, the agent of the appellee company; that all the creditors of the appellee company would sign said agreement of July 11, 1927; and that neither the Fisher Supply Company nor the Iowa Mutual Liability Insurance Company would have signed said agreement had they known that other creditors were to be paid in full at that time. It appears without any dispute that certain creditors having amounts under $100 were paid in full. This suit is brought to recover the difference between 75 per cent of the claims of the Fisher Supply Company and the Iowa Mutual Liability Insurance Company and the full amount of their claims.

At the close of all the evidence the gravel company moved the court to direct a verdict in favor of the gravel company and as against the appellant. The court sustained the motion, and thus this appeal.

The first question which confronts us is whether the agreement of July 11, 1927, was a composition agreement or whether it was merely an extension of time in which the appellee company had a right to pay its debtors. A composition with creditors is defined in 5 Ruling Case Law 868, as follows:

"A composition with creditors is defined as an agreement between an insolvent or embarrassed debtor and his creditors, whereby the creditors in consideration of an immediate payment agree to accept a dividend less than the whole amount of their claims, to be distributed pro rata, in discharge and satisfaction of the whole debt."

A composition agreement is an agreement between the debtor and all his creditors and also an agreement among the creditors themselves, providing for an immediate payment of a part of their debts prorated, in full settlement and satisfaction of such debts. Exhibit B, the agreement of July 11, 1927, did not provide for an immediate payment of a part of their debts, but it provided for the payment of the entire amount of the debt, plus interest. Said agree-

ment did not provide that any of the creditors should take less than their entire debt. It was simply an extension of time which was given by the creditors to the debtor, and the debtor, in consideration of said extension of time, agreed to pay interest to the said creditors. If the appellee had offered to pay the appellant and its assignor the entire amount of their claims on November 7, 1927, with interest to that date, the appellant would have had the right to refuse and could have held the appellee to its extension agreement and compelled it to pay interest on the whole debt up to December 30, 1927. At the time the Fisher Supply Company agreed to accept the 75 cents on the dollar in full settlement under the agreement of November 7, 1927, it knew that certain creditors had been paid in full, and in response to the letter of the appellee company of November 7th, the Fisher Supply Company wrote and sent the letter Exhibit G, dated November 16, 1927, which is as follows:

"Mr. George E. Hise,
"1115 Bankers Trust Bldg.,
"Des Moines, Iowa.

"Dear Sir: We have your favor of Nov. 7th regarding the account of the Northwestern Gravel Company, which is $228.30, on which you make us a proposition of 75¢ on the dollar, which would be $171.23 net.

"Now, we believe it is good judgment for us to accept this, but we wish to make just one criticism in so doing. You owed Mr. G. T. Whitman of Marshall County, about $200.00. Some few months ago he was in here and stated that you had paid him in full and wanted to know if we had received our remittance. We told him we had not as yet, but gave no further information. Now if it is a fact that your firm has preferred even this one creditor, it is hardly right to ask us to take off 25%.

"Regardless of this situation, we will go the majority and take our loss, but we would like to have this Whitman case fully explained.

"Mr. Holland of Legrand has been in to see the writer and feels just as we do. I believe he is willing to meet your request also, but if Whitman was paid in full then you are certainly not treating all alike.

"Very truly yours,
"Fisher Supply Company,
"L. C. Abbott."

In reply to the letter of the Fisher Supply Company of November 16, 1927, Mr. George E. Hise, the president of the appellee company, wrote a letter explaining the facts covering the payment of the Whitman claim on a different basis than that which was being paid to the Fisher Supply Company, and in reply to that letter the Fisher Supply Company wrote to the appellee company stating that it was willing to accept the 75 per cent. The agreement of July 11, 1927, Exhibit B, was a written agreement extending the time of payment. The appellant and its assignor and the appellee signed this agreement. The debts of the appellant and its assignor were due and payable July 11, 1927. This agreement, Exhibit B, contained two provisions, either of which is sufficient consideration; first, it extends the time of payment and requires the appellee to pay interest, and, second, it provides that payment be made in installments instead of in one lump sum. Before the agreement of July 11th, the Fisher Supply Company and its assignor could have sued the appellee for the whole debt owing them. After the agreement was signed, they could not have sued until there had been a default on the extension agreement. Nor could the appellee have compelled them to accept payment of the whole debt before it was due under this agreement.

In the case of Diehl v. McKinnon, reported in 173 Iowa, at page 32, 155 N. W. 259, L. R. A. 1916C, 384, this court quoted with approval the rule voiced by the Wisconsin court in Herman v. Schlesinger, 114 Wis. 382, 90 N. W. 460, 466, 91 Am. St. Rep. 922, wherein the court said:

"The rigorous rule of the common law, permitting a person to receive part of an undisputed, presently due indebtedness, pretending to accept the same in satisfaction of the whole indebtedness, the debtor parting with the amount paid with that understanding, and then change front and sue for the balance of such indebtedness on the ground that the release thereof was void for want of consideration, is so little favored by courts that it is commonly held not to apply where anything, whether of advantage to the creditor or disadvantage to the debtor, can be reasonably said to stand for that part of the indebtedness not measured by an equivalent in money actually paid to the creditor. The common-law rule has been abolished by statute in Alabama, Georgia, Maine, North Carolina, Tennessee, and Virginia, and perhaps some other states. In Connecticut it has not been recognized by the courts. Ford v. Hubinger, 64 Conn.

129, 29 A. 129. In the other states where no statute exists to the contrary, it is believed that the rule is adhered to in form, but there is apparently a progressive disposition to disregard it in spirit. It is said that there is sufficient consideration moving with the part payment to release an indebtedness to take the transaction out of the common-law rule, if the debtor does anything which he is not bound by law to do, or omits to do anything which he has a right to do, to the advantage, in any appreciable degree, of the creditor, or the disadvantage of himself."

And, again, in Marshall v. Bullard, reported in 114 Iowa, page 462, 87 N. W. 427, 428, 54 L. R. A. 862, this court said:

"If, however, such an agreement is supported by any new consideration, though insignificant, or technical merely, if valuable, it will be upheld. Thus, if a part is to be and is paid before due, or at a place other than that at which the obligor was legally required to pay, or if payment is made in property, no matter what its value, or by the debtor in composition with his creditors generally, in which, they agree to accept less than their demands, the consideration is held to be sufficient."

Thus, in the face of these decisions, there can be no question but that there was good consideration for the settlement on the 75 per cent basis. The Fisher Supply Company and its assignor received payment before the debts were due. The appellee parted with its money before it could have been compelled to pay. The appellant company and its assignor received 75 per cent of the amount due them early in November of 1927, while under the extension agreement none of it was due until December, 1927, and then only 25 per cent. Clearly it seems to us that the agreement of July 11, 1927, was not a composition agreement, but was merely an extension of time entered into with each creditor separately. This must have been the belief of the Iowa Mutual Liability Insurance Company, the assignor of the appellant company, for it insisted on a payment of $200 on its debt before it would sign this agreement. In other words, it placed itself in a better position than the other creditors. The Fisher Supply Company knew before it accepted the 75 per cent settlement that other creditors had been paid on a different basis, and yet, in face of that, it went ahead and accepted the 75 per cent. The 75 per cent was paid before the debts were due under the extension agreement, which was in itself sufficient con-

sideration. We believe that the lower court was right and that the judgment and decree of the lower court must be, and it is hereby, affirmed.

ALBERT, C. J., and EVANS, STEVENS, CLAUSSEN, ANDERSON, KINDIG, and DONEGAN, JJ., concur.