Richmond, Administratrix, Respondent, vs. Smith, imp., Appellant.

*February 25—March 21, 1903.*

*Fraud: Husband and wife: Conveyance by husband pending divorce action: Evidence.*

1. It is not *per se* fraudulent, as against a wife suing for divorce, for the husband to convey his property without her knowledge, or to withhold such a conveyance from record.
2. The fraud in such a case must consist in a purpose on the part of the husband, shared or at least known by the grantee, to defeat the wife's rights; and such purpose must be clearly and satisfactorily established.
3. A finding of the trial court in this case, that a conveyance of land by the husband—made for a full consideration, after he had, as a division of property, assented to by the wife, conveyed at least one half of his property, including his residence, to a trustee for her—was without consideration and for the purpose of defrauding the wife, is *held* to be against the overwhelming preponderance of the evidence.

APPEAL from a judgment of the circuit court for Polk county: A. J. VINJE, Circuit Judge. *Reversed.*

Action to establish and quiet title to certain forty acres of land, commonly referred to as the south forty, of Boucher's farm. The title disclosed substantially without dispute in the evidence was as follows:

Boucher being the owner of a farm of eighty acres, and there being an action for divorce pending by his wife against him, on November 29, 1895, he, with his wife, made deed of the north forty to one Oakey, reciting the existence of the· divorce proceedings and that the parties had agreed upon a settlement of the property owned by them when a decree shall be entered, if at all, and providing that then the said Oakey shall transfer the title to the wife; which deed was at once duly recorded. On February 11, 1896, Boucher (his wife not joining) made warranty deed to the defendant *Frank W. Smith* of the south forty, subject to a mortgage of $400; acknowledging payment of a consideration of $800, its reasonable value. At that time both forties were occupied by a tenant, cropping the same on shares; and it was agreed between Boucher and *Smith* that the former was to have the rent for the year 1896, which agreement was carried out. *Smith* did not place that deed on record, but about April 1, 1897, rented the forty to a tenant. The divorce action pending in 1895 seems to have been dropped—there is no evidence as to whether dismissed or simply allowed to lie dormant. Another divorce suit was commenced, at a date not fixed, but apparently about January, 1897, in which judgment was rendered on the 7th day of April, 1897, decreeing divorce, and adjudging to the wife the whole eighty. *Smith's* deed was not then on record, and there is controversy as to whether the fact of the conveyance was then made known to the plaintiff's attorney and to the court. That deed was recorded April 8, 1897, and the decree of divorce was recorded in the office of the register of deeds on April 14th.

The present action was commenced February 2, 1899, and charged that the conveyance from Boucher to *Smith* was fictitious, and consisted merely in placing said deed on record on April 8, 1897, by said Boucher; that it was made and executed for the purpose of defrauding the wife, Lydia K. Boucher, of her rights in the divorce proceedings; that it was without consideration; and that if it was executed and delivered on February 11, 1896, Boucher and the appellant, *Smith,* conspired to keep the same off the record and from the knowledge of said wife for the purpose of misleading her, her attorney, and the court in the matter of providing for alimony; and asserting that the defendant *Smith* was in possession.

The court filed findings, first, that the allegations of the complaint are proved and true; that, by reason of the decree of divorce and deed of conveyance from Lydia K., the plaintiff is the owner in fee of the premises in question, and that the defendant is in possession thereof; that the deed from Boucher to *Smith* was without consideration, and was given for the purpose and with the intent on the part of Boucher to deprive his wife of her share of his property, and for the purpose of embarrassing and annoying her, and that for such purpose he connived with the defendant *Smith* to keep said deed off the record and keep silent as to said transfer, and that, to continue the purpose of such deception, Boucher continued to act as owner; and that defendant was at all times cognizant of the fraudulent intent, and aided and abetted therein. There was further finding of certain evidentiary facts claimed by the plaintiff to tend to establish these fraudulent purposes, whereupon judgment was entered declaring the plaintiff the owner in fee simple, and barring the defendant against claiming any right or title in the land, and adjudging a recovery of damages for the withholding of the premises and for costs, from which the defendant appeals.

For the appellant there was a brief by *Frank B. Dorothy,* and oral argument by *Mr. Dorothy* and *Mr. A. L. Sanborn.*

For the respondent the cause was submitted on the brief of *Haugen, Grimm & Chinnock.*

DODGE, J.  Fraud must be clearly and satisfactorily established before a court is justified in inferring its existence. *Shaw v. Gilbert,* 111 Wis. 165, 189, 86 N. W. 188.  In the present case no specific act of fraud is directly proved, nor indeed supported by any direct evidence.  It is not *per se* fraudulent for a husband to convey his property without his wife's knowledge.  He has a perfect right to do so.  Nor is it *per se* fraudulent, as against a wife, to withhold such a conveyance from record, either negligently or by agreement between the husband and the grantee.  As to her the reasons fail which have led the courts to declare such act by agreement fraudulent as to creditors who are likely to be induced to extend credit on the faith of the record.  The fraud in the case, if any exists, can consist only in the purpose to defeat her rights, and even such purpose entertained by the grantor is ineffective unless also shared or at least known by the grantee. The purpose found by the court was to "deprive his said wife of her share of his property, and for the purpose of embarrassing and annoying her in securing her just proportion thereof in any proceedings she might bring against him."  Is there any evidence which could reasonably justify the court in finding that the existence of such a purpose, even on the husband's part, is clearly and satisfactorily established?

Divorce proceedings were pending, and evidently expected to result in divorce.  The husband had, as a division of property, assented to by the wife, conveyed, to a trustee for her, property amounting to quite one half in value of all he is shown to have possessed, and including his residence.  There is no evidence that she had expressed any dissatisfaction with such adjustment, or purposed to claim any more.  In this situation he sells the remaining forty acres, with obvious natural reasons therefor, namely, that it no longer adjoins or

pertains to the land on which he lives, has no buildings, and is therefore not habitable, and probably not adequate by itself as a farm, and can be utilized only to rent, and is subject to a mortgage. We are convinced that such a situation renders entirely reasonable the desire to sell, and strongly contradicts any purpose such as the court finds, for he naturally would believe his wife had already received all she would demand in the divorce proceedings, and all that any court would give her, for few cases sanction more than one half as the wife's share upon a division of property. He was fully justified in believing that such conveyance could not deprive her of any rights or obstruct any claim she was likely to make.

Against this inference of *bona fides,* so strongly supported by the situation, there exist only the facts that the husband informed no one of the sale, and, as the court finds, remained the ostensible owner and in full possession and control until after the decree of divorce. There is no proof that he informed no one—merely that he did not inform two or three persons who testify. We cannot deem this silence as to a business transaction evidence of any serious weight. He owed no duty to proclaim it, and it may have resulted from any of several entirely innocent reasons. Mere accident, danger of harassment by creditors, and natural reticence about private affairs, especially under the unhappy family conditions, are only a few that might be suggested. The finding as to the husband's ostensible ownership and control has support in the evidence to only so limited an extent that it is rather a flight of rhetoric than a statement of an exact fact. Substantially the only support it has is that he did the acts necessary to collection of the rent in kind for the year 1896, which he had reserved in the sale to the defendant, and that in March, 1897, he received certain damages allowed for a highway condemnation. The latter transaction, however, rather negatives than supports the finding, for, after learning that such damages had been allowed, he reported the fact to appellant, who

lived some fifteen miles away, and got from him a written order for the money, which, after collecting it, he paid over to him. Such an act *in pais* certainly does not suggest that either the husband or the appellant was consciously treating the land as the property of the former.

Some other findings assert so-called facts which might tend to mark the sale as unusual if they existed—for example, that Boucher himself delivered the deed of February 11, 1896, to the register of deeds on April 8, 1897. To support this there is no shred of evidence, except that another deed executed that day was also delivered to the register on April 8th, while there is abundant and positive evidence to the contrary, which the court had no right to disregard. Again, it is found that the deed was without consideration. This, again, is wholly without evidence in its support, and is negatived by the deed itself, which acknowledges payment of $800, subject to a $400 mortgage—an amount which the testimony of respondent's counsel shows to have been fully up to its value. Appellant also offered parol testimony as to the consideration, which the court excluded, however, as out of proper order. Certain other evidentiary facts are declared by the findings, which, however, we deem so remote or immaterial that we need not discuss them. We are convinced that the so-called suspicious acts and circumstances of which there is any proof are wholly inadequate to warrant the inference of any such purpose in the mind of the grantor as the trial court drew, as against the circumstances which so strongly negative such inference.

As to the appellant there is still less support for any inference of fraud. As against him, there is no direct fact, except his omission to record his deed, which he declares to have been habitual with him, as, indeed, it is with many. True, he had nothing to do with the land during 1896, but it was then in the possession of a lessee who owed no duty to him. That he did not consider the land as still belonging to Boucher

is shown by his treating the highway damages as his own, and by the fact that seasonably in the spring of 1897—about April 1st—he made lease to a tenant of his own selection. There is a finding that he connived with Boucher to keep the conveyance secret and to withhold the deed from record, but of this there is no direct evidence. It is a pure inference from the same facts and circumstances as the inference of a fraudulent purpose, and must fall with that. Against these so-called suspicious circumstances is the undisputed fact that he paid full value for the premises. Such an act has always been considered very strong proof of good faith in a buyer— so strong that of itself alone it overcomes the statutory presumption of fraud arising from continuance of vendor's possession upon a sale of personal property. *Griswold v. Nichols, ante,* p. 267, 94 N. W. 33. Especially significant is such payment, when, as apparently the case here, the vendor is in feeble financial circumstances, so that his ability to repay such purchase price is very doubtful. Much weight is laid by respondent on appellant's admission that he heard often of the divorce proceedings in which the decree was finally entered, but, inasmuch as such proceedings are not shown to have been commenced till nearly a year after the purchase, we find difficulty in discovering how appellant's motives at the time of sale could have been affected thereby.

After careful consideration of all the evidence, we are forced to the conclusion that the finding of the trial court that the sale to appellant was without consideration and for the purpose of defrauding Mrs. Boucher, was so clearly opposed by overwhelming preponderance of the evidence that we must believe that the circuit court either erroneously applied rules of law thereto, or through mistake or other cause did not give to the evidence due consideration.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.