Miles, Appellant, vs. Pike Mining Company and another, Respondents.

*February 1—February 21, 1905.*

*Fraudulent representations: Mining option: Notice of assessments: Payment by administrator: Right to recover: Conversion.*

1. Plaintiff's intestate had owned an interest in a mining option and had paid his proportionate assessments, and this interest was inventoried as an asset of his estate. After his death a corporation was organized, to which the option was transferred as full payment for its stock. No stock certificates were issued, but assessments upon the several owners were made as before. The notices of these assessments stated that the directors of the corporation had levied a certain assessment upon each share of assessable stock, specified the number of shares sup-

posed to be owned by each person notified, and requested a remittance. Plaintiff, as administrator, paid several of these assessments, knowing that neither the decedent nor the estate held any stock in the corporation. He also understood that stock representing the decedent's interest would be issued on application and, under the law, would be nonassessable. He knew, too, that the decedent's interest in the mine had been called "stock," and had been held with the understanding, among the associate owners, that they should pay proportionate assessments as might be necessary for development, etc. *Held*, that the sending of said notices to plaintiff as administrator did not constitute actionable fraud or deceit which would entitle him to recover, in a tort action, the amount so paid by him.

2. Assuming that an administrator may sue to recover back property unlawfully diverted from the estate, even though he knowingly participated in the unlawful act, and assuming that the application of moneys of an estate to a known unlawful purpose by persons to whom such moneys were paid by the administrator might constitute such conversion as to warrant an action in tort for damages, yet where, among the assets of an estate, was an interest in a mine which was expected to require, from time to time, advances for protection or enhancement of its value, payments made in good faith by the administrator for that purpose, and so received and applied by those in charge of the mine, do not warrant any inference of fraud or wrongful intent, and—especially where there is nothing to show that the value of the property has not been enhanced to the full amount of the payments—do not give the administrator any right to recover damages in a tort action against those who received the moneys.

APPEAL from a judgment of the circuit court for Bayfield county: JOHN K. PARISH, Circuit Judge. *Affirmed.*

Plaintiff's decedent for many years had been one of several owners in a so-called mining option, being an option or privilege to prospect on certain land and to receive a lease of mining privileges upon certain conditions. That option had been held under various names, but for some years prior to the death of said decedent was held by one Pike, said decedent's interest therein being about one sixteenth, or, as it was expressed, 2,550 shares out of a total of 40,000. The associates

had acted as if incorporated for many years, and the expenses of the prospecting had been paid by them, on call, proportionately to their respective shares. The enterprise had received several designations, but latterly that of the "Pike Option." At one time a corporation had been organized, in which no stock was formally issued, but the associates were understood to hold shares in the same proportion as above stated. Decedent's investment at the time of his death had reached some $5,000 or $6,000, which was inventoried as an asset. Shortly after his death articles of association were filed under the name of the *Pike Mining Company,* and some of the associates formally signed subscription for their proportionate shares of stock, but no certificates were issued to them. The lease held by Pike was surrendered, and a new lease taken out in the name of the *Pike Mining Company* as full payment for its total stock. After such incorporation, calls were made from time to time on the various associates for paying the expenses of further prospecting, working, and development. Plaintiff, as administrator, received notices of such demands from those who had acted previously under the designation of "Secretary" and "Treasurer" of the associates, and who were elected secretary and treasurer of the new corporation. He voluntarily paid such assessments, or calls, up to the amount of $3,232, which was expended, together with the contributions of the other associates, in developing the property. After paying these amounts he learned that such certificates of stock in the new corporation as had been issued declared the stock fully paid and nonassessable, and, further, he conceived a doubt as to whether he had any right, as administrator, to pay out the moneys of the estate for this purpose. He therefore brought suit against the *Pike Mining Company,* the corporation, and *Charles Latimer,* its treasurer, who had personally received his checks as administrator and deposited them to the credit of the corporation, alleging that he had been induced to make said payments by reason of the

false and fraudulent representation made by defendants to him that his decedent was the owner of 2,550 shares of the capital stock of said corporation and that the estate was indebted to said company for the assessments made, and that the defendants received said money and wrongfully and unlawfully converted the same to their own use, well knowing that they had no right to receive, retain, or use the same, and that they had refused to repay on demand; therefore he prayed judgment for the amount so paid.

At the opening of the trial, being put to an election as to whether he stood on allegations of tort or contract, he elected tort, and the case was tried on that theory. At the close of the plaintiff's case, wherein substantially the foregoing facts were proved, the court granted the defendants' motion for nonsuit and entered judgment accordingly, from which plaintiff appeals.

For the appellant there was a brief by *Tomkins, Tomkins & Garvin*, attorneys, and a separate brief by *James G. Flanders*, of counsel, and oral argument by *W. M. Tomkins* and *Mr. Flanders*.

For the respondents there was a brief by *Lamoreux & Shea*, attorneys, and *John M. Flynn*, of counsel, and oral argument by *W. F. Shea*.

Dodge, J. The cause of action presented by the complaint is extremely uncertain. We find it difficult to discover any action of tort except one for deceit, namely, for inducing plaintiff to pay over certain moneys by fraudulent misrepresentation that the estate was the owner of 2,550 shares of the capital stock of the defendant corporation and was indebted to the corporation for assessments thereon. No proof of such representation is found or suggested except certain notices sent to the plaintiff. Of these the first is typical, and asserted, in substance, that on June 24, 1902, at a meeting of the directors of the *Pike Mining Company*, "an assessment of 60%

was levied upon each share of assessable stock, 10 cents per share on the 10th of each month, commencing with July 10, 1902, until the full 60 cents per share is paid. Please remit; make remittances to *C. F. Latimer,* Treasurer, Ashland, Wisconsin, on or before July 10, 1902. 2,400 shares at 10 cents per share, $240. George Quayle, Secretary." At this time the plaintiff knew, in a general way, that a change had been made in the name or custody of the legal title under which the various associates claimed rights in this mining property, and that a corporation had been organized to take that legal title in place of either Mr. Pike or the pre-existing West Brotherton Mining Company. He knew that such organization and change had been made since the death of his intestate, and therefore that neither the deceased nor his estate held any capital stock in that corporation. He also understood that he could get stock as representing his interest in the enterprise by applying for it, and that such stock, when issued in consideration of such shares, would, under the law of Wisconsin, be nonassessable. He also knew, as he alleges in his complaint, that the indefinite interest in the mine had been called "stock," and was held with the understanding, amongst the associates, that they should respond to proportionate assessments as might be necessary for the protection or development of that mine. It seems to us clear, therefore, that if these notices conveyed to his mind any assertion that his estate was the holder of assessable stock, he must have understood it as referring to the so-called "stock" or equitable shares in the mining property, and not to technical capital stock in the *Pike Mining Company.* There is in these notices neither assertion that the plaintiff, as administrator, or his estate owned any such stock, nor that either was indebted for any assessment; but, if it might bear such construction, still plaintiff could not have been misled, for he knew to the contrary. Deceit or fraud is not to be lightly inferred, but must be clearly and directly established. Jones, Evidence, § 190; *Shaw v.*

*Gilbert,* 111 Wis. 165, 189, 86 N. W. 188. We must agree with the trial court that the allegation of deceit by misrepresentation, set forth in the complaint, is not at all supported by these notices, and, as we have said, is without other proof, hence that there was no evidence to go to the jury upon the technical action of deceit.

It is, however, urged by appellant that there can be spelled out of this complaint something in the nature of an action in trover, based upon the fraudulent conversion of moneys of the estate paid by the plaintiff and received by the defendants for an unlawful purpose, to the knowledge of all, and that such action can be maintained by the administrator in his representative capacity and in protection of the true beneficiaries, notwithstanding the fact that he personally had knowledge of the unlawful character of the payment when he made it. It would be difficult to find this cause of action expressed in the words of the complaint, at least with the clearness of allegation which is demanded in the case of fraud; but, as it must be presumed that a new action may be commenced based upon any allegations which would be supported by the facts, it seems best to consider the case as it appeared upon the evidence, rather than as limited by the allegations of the complaint; remembering, however, that only so far as some tort action is supported can the nonsuit be held erroneous.

We are not inclined to question the right of an administrator to sue to recover back property unlawfully diverted from his estate merely because he participated, even knowingly, in that unlawful act. The interest to be protected by such a suit is that of the true beneficiaries, and not of the person who happens to be administrator. There is much reason, therefore, for overlooking the assumed absurdity of his suing a third person to undo a wrongful act of his own. It will not be necessary in this case to decide just what circumstances may be consistent with the maintenance of such an action and what inconsistent. Two illustrative cases on opposite

sides of the line are cited by the appellant from New York, namely, *Wetmore v. Porter,* 92 N. Y. 76, and *Woodbridge v. Bockes,* 170 N. Y. 596, 63 N. E. 362. Neither shall we deem it necessary to pass upon the somewhat technical objection, raised by respondent, that the action of trover is maintainable only upon a refusal to return specific property, and cannot be maintained here because no specific bank bills, or other forms of money, are shown to have been delivered to the defendants and withheld by them in resistance to a demand for their return. We shall proceed on the assumption, without deciding its correctness, that the application of moneys of an estate to a known unlawful purpose by the defendants might constitute such conversion as to warrant an action in tort for the damages thereby occasioned, although no case supporting that assumption has been cited to us, all of the cases presented being either upon an imputed contract or in equity.

The defendants can be guilty of tort only in case of actual fraudulent intent in receiving the money in question. True, that intent need go no further than to appropriate moneys of the estate to a purpose which defendants knew, or as reasonable men ought to have known, was unlawful. To that extent, however, turpitude must appear. The law always presumes innocence rather than fraud. Hence the rule, so often declared, that the burden of proof is upon him who alleges fraud to prove it, and that, too, clearly and satisfactorily. *Shaw v. Gilbert,* 111 Wis. 165, 86 N. W. 188; *Richmond v. Smith,* 117 Wis. 290, 293, 94 N. W. 35; *Harrigan v. Gilchrist,* 121 Wis. 127, 99 N. W. 909. This rule is not in conflict with the numerous holdings in this state that, under certain circumstances, the obtaining property from an incompetent or feeble-minded person will be presumed to have been accomplished by fraud or undue influence, for such cases rest on the view that the circumstances themselves prove the fraud unless its existence be negatived by other evidence. *Fox v. Martin,* 104 Wis. 581, 80 N. W. 921; *Loennecker's Will,* 112

Wis. 461, 88 N. W. 215; *Vance v. Davis,* 118 Wis. 548, 95 N. W. 939. Again, the attitude and responsibility of a stranger who merely receives moneys from a trustee or administrator, payment of which might be proper under some circumstances though improper under others, must not be confused with the attitude of the trustee himself when attempting to account for the same payments. In the latter case the burden rests on the custodian of the funds to justify his payment; not, indeed, to prove his innocence of fraud, but to establish affirmatively that he made the payment for which he seeks credit for the benefit of his trust. On such inquiry payments may be proper or improper, according as they are wise or unwise, and a trustee makes such at his own peril. They may be approved or disapproved upon his accounting, and he must abide the event. Not so, however, the recipient of such moneys who acts innocently, as he is presumed to do. The subject received full consideration in *Harrigan v. Gilchrist,* 121 Wis. 339, 99 N. W. 973, where we reversed a charge against third persons for moneys paid for their benefit, while we held the receiver liable to account for the same moneys. Neither must the situation now present be confused with that of a purchase by a trustee, either alone or in association with others, at his own sale of trust property, to which is applied the salutary rule that it still remains trust property if the beneficiaries so choose, no matter how complete the showing of good faith and absence of wrongful intent. *In re Taylor Orphan Asylum,* 36 Wis. 534, 550; *Hutson v. Jenson,* 110 Wis. 26, 40, 85 N. W. 689; *Harrigan v. Gilchrist,* 121 Wis. 330, 363, 99 N. W. 970, 982. Similar rules apply in case of appropriation of trust property or moneys to his own use by the trustee. *Hutson v. Jenson, supra.* Such are most of the cases cited by appellant. *Deobold v. Oppermann,* 111 N. Y. 531, 19 N. E. 94; *First Nat. Bank v. Nat. Broadway Bank,* 156 N. Y. 459, 51 N. E. 398; *Warren v. Union Bank,* 157 N. Y. 259, 51 N. E. 1036.

Turning now to the instant case, it cannot be doubted that an administrator not only may, but should under some circumstances, pay moneys of his estate in protection or preservation of property belonging to it; and, when he does so in good-faith belief in its propriety, neither he nor the recipient can be charged with fraud or other tort, although a court may disapprove the wisdom of the expenditure. The sum total of the facts proved is that among the property of plaintiff's estate was this interest in a mine expected to require, in protection or enhancement of its value, advances from time to time. Plaintiff, with knowledge of such facts, paid the money in question for that purpose, and defendants so received it and applied it. It was not diverted to the private use of the administrator, nor, in the fraudulent sense, to the use of the defendants, but was used for the supposed benefit of the estate. In this we confess our inability to discover any warrant for an inference of fraud or wrongful intent, or, indeed, of any wrong or injury to the estate, for there is nothing to suggest that the value of the property has not been enhanced to the full amount of the payments.

Appellant urges that an administrator can in no case engage in business or speculation on behalf of the estate; but, if he did so, his disbursements therein would hardly be disallowed him so far as they profited the estate, and certainly no damages in tort could be recovered from the person who received such moneys and gave full value for them, unless in so gross a case that it would be beyond reason to believe that he so received them otherwise than with intent to wrong the estate. Here there is no evidence that the payment was at all speculative. So far as the present proofs go, the mine may have been as stable and certain a property as a rentable building, and the payments as certain to benefit the estate as would be repairs on such a building necessary to preserve its rentability. It is entirely believable that the defendants received this money and expended it on the property in the

honest opinion that the welfare of the estate would be promoted thereby. If facts exist which would preclude such belief they have not been put in evidence. We therefore agree with the trial court that there was no evidence from which the jury could reasonably have drawn the inference of fraud or other wrong, nor convicted defendants of any tort.

*By the Court.*—Judgment affirmed.