Charles A. NANFITO, Administrator of the Estate of Alice C. Major, Appellant,

v.

TEKSEED HYBRID CO. et al., Appellees.

No. 72–1241.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 17, 1972.

Filed Feb. 12, 1973.

J. Patrick Green, Omaha, Neb., for appellant.

Waldin H. Olson, Omaha, Neb., for appellees.

Before HEANEY and STEPHENSON, Circuit Judges, and BOGUE, District Judge.[*]

HEANEY, Circuit Judge.

Charles A. Nanfito, as Administrator of the Estate of Alice C. Major, appeals from the decision of the United States District Court for the District of Nebraska. Defendants are a Nebraska corporation, Tekseed Hybrid Company and five individuals [1] who were shareholders, officers and directors of Tekseed and a second Nebraska corporation, Tek Annex Company.

Nanfito brought an action in the District Court under Nebraska common law and § 10(b) of the Securities Exchange Act of 1934 [2] and Rule 10b–5,[3] for fraud, deceit, undue influence and negligent misrepresentation practiced upon Alice Major by the defendants in connection with a corporate merger and the execution of a buy-sell agreement. The defendants counterclaimed for specific performance of the buy-sell agreement. The trial was before the court without a jury, and the District Court, 341 F. Supp. 240, found for the defendants on all points. We affirm.

Tekseed was formed in the 1930's by six farmer friends in Tekamah, Nebraska. The individual defendants, or their antecedents, were founders of the firm, along with the husband of the deceased, Alfred Major, Sr. The business of Tekseed was and still is producing and selling hybrid corn seeds. Tek Annex was formed by the same men in 1952. This corporation engaged in the retail sales of farm supplies. The corporation ceased active operation in the early 1960's. It was liquidated in December, 1965, and the proceeds were placed in a bank account.

Alfred Major, Sr., owned a one-fifth interest in each of the two corporations —five hundred shares of Tekseed and one hundred shares of Tek Annex. He was active in the operation of the two corporations. Mr. Major died in 1960.

---

[*] District of South Dakota, sitting by designation.

[1] The individual defendants are: William Breckenridge, Charles Gammell, James Cornish, Raymond Cram and Gordon Cram. All were shareholders and directors of both corporations, while Cornish and the Crams were also the officers of both corporations.

[2] "Sec. 10. It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

\* \* \* \* \*

"(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors. 15 U.S.C. § 78j(b).

[3] "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

"(1) to employ any device, scheme, or artifice to defraud,

"(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(3) to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

17 C.F.R. § 240.10b–5.

His wife, Alice C. Major, inherited his interest in the corporations. She was not an officer or director, and was not active in the operation of the corporations. However, she did attend stockholders' meetings, and received financial reports on both corporations and her share of the earnings each year.

Soon after Tek Annex's assets were liquidated into cash, Alice Major asked to have her one hundred shares in Tek Annex redeemed by the corporation. Redemption was agreed to by the directors, and during 1966, she was paid $14,526.85 for her shares.

Tekseed operated in accordance with the provisions of Subchapter S of the Internal Revenue Code, 26 U.S.C. §§ 1371–1379. Consequently, each year, most, if not all, of the corporation's earnings were distributed as dividends to the shareholders. To obtain additional capital to modernize Tekseed's plant and equipment, the directors of Tekseed and Tek Annex (the same persons) proposed a merger of Tek Annex into Tekseed. An exchange ratio was developed by a certified public accountant who had performed annual audits and other fiscal functions for Tekseed and Tek Annex since 1954. The exchange ratio was arrived at by considering solely the book value of the two corporations. All shareholders of both corporations, including Mrs. Major (by proxy vote), approved the merger, which was effected on July 1, 1968. The effect of the merger on Mrs. Major was to reduce her proportionate interest in Tekseed from twenty per cent to 14.71 per cent.

A buy-sell agreement, dated January 11, 1969, was entered into by all of Tekseed's shareholders, including Mrs. Major. The agreement provided, in part, that upon the death of any shareholder, "[Tekseed] shall purchase and the estate of the decedent shall sell all of the decedent's shares of capital stock to [Tekseed]" at the price set in the agreement, i. e., $12.50 per share, within ninety days after the death of the stockholder.[4]

Mrs. Major initially was reluctant to sign the buy-sell agreement, but she was persuaded to do so by three of the defendants who traveled from Nebraska to her home in Missouri on January 13, 1969. They reviewed the agreement with her, answered her questions regarding it, encouraged her to sign it, and she did so on that date.

Mrs. Major died in January, 1970, and the price of $12.50 was still in effect. Within ninety days after her death, Tekseed formally tendered the sum of $43,750, in cash, to Charles A. Nanfito, the Administrator of Mrs. Major's estate, and demanded that he take all steps necessary to transfer the deceased's Tekseed stock to Tekseed. Nanfito refused to accept the cash, and Tekseed deposited the money in a demand escrow account running to the benefit of the estate and conditioned upon transfer of the capital stock to Tekseed.

Nanfito then initiated this action against the defendants. His position in the District Court is essentially reiterated in this appeal. We turn to a discussion of the four issues raised on appeal. The first two relate to the merger, while the latter two charge that improprieties were associated with the buy-sell agreement.

■ (1) Nanfito first contends that the trial court erred by not finding that the defendants breached their fiduciary duty to Mrs. Major by either intentionally or negligently undervaluing Tekseed's stock in setting the exchange ratio for the merger of Tekseed and Tek Annex. He argues that the defendants, as directors and insiders of both Tek-

---

4. This provision served to prevent any post-death transfer of the decedent's interest other than to the corporation. However, the agreement did assure the estate of a purchaser for the stock because there was a mandatory obligation upon the corporation to buy and a similar obligation on the estate to sell the stock. Other provisions of this typical buy-sell agreement restricted *inter vivos* transfer of the stock without first offering to sell the stock to the corporation and other shareholders.

seed and Tek Annex, were fiduciaries to Mrs. Major and that the exchange ratio was unfairly set to benefit them as owners of stock in both corporations at the expense of Mrs. Major who only owned stock in Tekseed. The source of this unfairness, according to the plaintiff, is that the defendants used book value rather than past earnings as the principal guide in valuing Tekseed's stock.[5] Nanfito claims that this alleged breach of fiduciary duty constituted a violation of § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5, under the theory of the Sup't of Insurance v. Bankers Life and Cas. Co., 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971), decision.[6]

The trial court agreed that the defendants were fiduciaries as to Mrs. Major. However, it found that they had not acted fraudulently or negligently in setting the exchange ratio and had thus not breached their fiduciary duties. The court noted that the defendants had relied on an experienced accountant, who was well acquainted with the operations of both Tekseed and Tek Annex, to compute the exchange ratio. It also indicated that it was not necessary for the defendants to consider Tekseed's earnings in establishing the exchange ratio because: (a) Tekseed's plant and equipment were obsolete; (b) the hybrid corn seed business was extremely competitive; (c) the plant's layout and location were poor; and (d) the loss of the firm's combination business manager-geneticist was anticipated, and they did not have a qualified replacement.

Valuation is a question of fact, and its determination by the trier of fact should not be disturbed unless clearly erroneous. Northern Natural Gas Company et al. v. United States of America, 470 F.2d 1107 at 1110 (8th Cir. 1973); Knauff v. Utah Construction & Mining Co., 408 F.2d 958, 961 (10th Cir.), cert. denied, 396 U.S. 831, 90 S.Ct. 83, 24 L.Ed.2d 81 (1969). We find no clear error here in valuing Tekseed stock for the exchange ratio. In our view, the valuation approved by the trial court is fully supported by the record. As the court properly found that the defendants did not violate their fiduciary duties, there was no violation of § 10(b) or Rule 10b–5.

(2) Nanfito's second contention is that the defendants violated the Securities Exchange Act by not disclosing all relevant facts respecting the merger to Mrs. Major. He argues that the defendants were obligated as fiduciaries to inform Mrs. Major as to the reasonable value of the stock or, alternatively, to inform her of the value of the assets and a reasonable capitalization rate of earnings. He contends this information was necessary for her to determine whether the exchange ratio was a fair one and, thus, to decide whether to approve the merger or to exercise her right of dissent and appraisal under Nebraska law. The trial court correctly approached this issue with the view that the defendants were obligated to provide Mrs. Major with all information which would have enabled her to determine how her interest in the corporation might be altered. It found that this obligation was complied with and that Mrs. Major was aware of all the facts necessary to make an informed decision. The record supports this finding. Mrs. Major had a long and close association with the merged corporation. She was well informed as to their relative condition and earnings history, and was also aware of the reasons for the merger.

---

5. Annual before-tax earnings for Tekseed for the years 1964–1970 were as follows:

| | |
|---|---|
| 1963—$104,000 | 1967—$103,000 |
| 1964—$ 56,000 | 1968—$ 75,000 |
| 1965—$  7,000 | 1969—$ 95,000 |
| 1966—$ 26,000 | 1970—$114,000 |

6. The trial court correctly held in its "Memorandum and Order," disposing of Nanfito's motion for a partial summary judgment, that this action could properly be brought under § 10(b) and Rule 10b–5. See, Glen J. Travis et al. v. Anthes Imperial Limited et al., 473 F.2d 515 at —— (8th Cir. 1973).

Under these circumstances, we think that the court correctly held that no material information was withheld from Mrs. Major, and that Mrs. Major was fully competent to take the information that was made available to her and to determine from that the effect which the merger would have on the value of her interest in the corporation.

In support of his position, the plaintiff relies on the following cases: Gerstle v. Gamble-Skogmo, Inc., 298 F.Supp. 66 (E.D.N.Y.1969); Baumel v. Rosen, 283 F.Supp. 128 (D.Md.1968), modified, 412 F.2d 571 (4th Cir. 1969), cert. denied, 396 U.S. 1037, 90 S.Ct. 681, 24 L. Ed.2d 681 (1970); Speed v. Transamerica Corporation, 71 F.Supp. 457 (D.Del. 1947). We believe, however, that they are inapposite as each of them involves a situation in which insiders concealed facts which would have materially affected the value of the stock. There was no such concealment here.

▆ (3) Nanfito's third contention is that the trial court erred in allocating the burden of proof respecting his claim that improprieties were associated with the buy-sell agreement. He argues that because the defendants were fiduciaries of Mrs. Major, Nebraska law places the full burden of persuasion on the defendants to prove by a preponderance of the evidence that the alleged improprieties had not taken place.[7]

Initially, we note that the trial court did not specifically rule that the plaintiff had the burden of proving the improprieties. It simply held that the defendants had not acted improperly. Assuming, however, that the plaintiff's contention is correct and that the trial court placed the burden on him, it did so properly:

"When relief on account of fraud is sought the burden of proving the existence of any fiduciary or confidential relationship or of any unequal footing is upon him who may allege such a

status and the existence of such a status, when proved, does not change the position of the burden of proving the existence of fraud. Such a status may be sufficient to cause fraud in a proved transaction to be legally inferred and thus to place the burden of going forward with the evidence upon the party charged with fraud. In this connection the phrases 'burden of proof' and 'burden of going forward with the evidence' should not be confused. Leichner v. First Trust Co., 133 Neb. 170, 274 N.W. 475; Miles v. Pike Mining Co., 124 Wis. 278, 102 N.W. 555; 22 C.J. 67, § 13; In re Estate of Hagan, 143 Neb. 459, 9 N.W. 2d 794."

Rettinger v. Pierpont, 145 Neb. 161, 15 N.W.2d 393, 412 (1944). See also, Kucaba v. Kucaba, 146 Neb. 116, 18 N.W.2d 645, 651 (1945).

(4) Nanfito's final contention is that the defendants were guilty of three improprieties with respect to the buy-sell agreement:

▆ The first allegation of impropriety is that the price of $12.50 per share for Tekseed stock, which was set in the agreement, was unfair, that it was represented to Mrs. Major as being "fair," and that this representation was false and violative of the Securities Exchange Act of 1934 and Nebraska common law. The upshot of Nanfito's argument is that the $12.50 price was unfair because the price was not reached by capitalizing Tekseed's past earnings. The trial court, however, found that the representation that the price was "fair" was not a fraudulent, negligent or innocent misrepresentation. This finding was supported by the substantial evidence in the record and is not clearly erroneous. The defendants testified that ignoring past earnings in setting the price in the buy-sell agreement was justified for the same reasons as those given for ignoring past earnings in setting

---

7. The plaintiff apparently assumes that Nebraska law applies to both the common law claims and the federal claims. We accept this assumption for the purposes of this appeal.

the merger exchange ratio. In addition, the accountant best acquainted with Tekseed's condition and operations testified that the price set was "fair."

The second allegation of impropriety is that the defendants were obligated but failed to tell Mrs. Major that the price set was a forced or convenience figure which did not necessarily represent the actual value of Tekseed's stock. The evidence indicates that the price was established with the belief that it was the true or actual value of the stock. This being the case, the price was not a forced one. Furthermore, the record reveals that the defendants did explain to Mrs. Major how the price was reached. Nanfito also urges that the defendants were obligated to tell Mrs. Major what the value of Tekseed's stock would be if its past earnings were capitalized. This claim is without merit. We do not believe that the defendants had an obligation under the Securities Exchange Act or Nebraska common law to indicate what the stock might be worth under an alternative method of valuation if the method used was a proper one under the circumstances. Here, the trial court held that the method used was appropriate and that the finding was not clearly erroneous. We affirm the trial court's finding that the defendants had not failed to fully disclose material facts.

The third allegation of impropriety is that the defendants used undue influence in procuring the approval of Mrs. Major. The trial court specifically found that Mrs. Major was an independent, competent and strong-willed woman who could not be easily persuaded or even "conned" into doing something she did not wish to do. It concluded that the defendants did not exceed the bounds of permissible persuasion and were not guilty of undue influence. Accordingly, it refused to rescind the agreement. We have reviewed the record and are satisfied that there is substantial evidence in support of these findings of the court. Moreover, we believe the record also supports the court's conclusion that Mrs. Major was satisfied with the agreement, and that her children are the ones who are dissatisfied with its terms.

Finally, we agree with the trial court's holding that Mrs. Major was bound by the buy-sell agreement, and that the agreement should be specifically enforced against the Administrator of the Estate.

Affirmed.