LOENNECKER'S WILL: CONSAUL and another, Appellants, vs. LOENNECKER, Respondent.

*December 2 — December 17, 1901.*

*Wills: Undue influence: Evidence: Presumptions.*

1. Evidence that a testatrix stated, previous to the execution of the will and afterwards, that her daughters ill-treated her and that she was obliged to make the will in their favor as she did because she was afraid of them, is not admissible to prove the fact that undue influence was exerted and will not support a finding to that effect.

2. The fact that a will is made in favor of one child to the prejudice of others does not of itself raise a presumption of undue influence, even though the parent be living with the favored child. In order to raise that presumption the evidence must clearly show that the testator was susceptible to undue influence, and that there was opportunity and a disposition on the part of the beneficiary to exert it.

3. In a contest over the probate of a will by which the testatrix gave all her property to her two daughters to the exclusion of a son from whom she had been estranged, it appeared that at the time the will was executed the testatrix was fifty-two years of age, of sound mind, and in fairly good health; that she was living in her own home with an unmarried daughter; and that while visiting another daughter she went at her own will, without the presence of any beneficiary, to the office of a notary where the will was drawn and executed. It did not appear that the beneficiaries knew that she was about to make the will. *Held*, that no presumption of undue influence arose.

APPEAL from a judgment of the circuit court for Milwaukee county: EUGENE S. ELLIOTT, Circuit Judge. *Reversed.*

This is a contest over the will of Johanna Loennecker, a widow, who made her will February 6, 1892, giving her son, *Charles*, the contestant, $5, and dividing the balance of her estate, amounting to about $8,000, equally between her two daughters, *Louise* and *Minnie*. She died March 24, 1900, aged sixty-two years; her three children being all adults and married. When the will was presented for probate in the county court of Milwaukee county, *Charles* contested the same on the ground of undue influence and mental incompetency; but the will was admitted to probate, and the contestant appealed to the circuit court, where the case was tried with a jury.

It appears from the evidence that prior to the year 1879, the testatrix and her husband lived on a small farm of fifteen acres at Whitefish Bay, just north of the city limits of Milwaukee, their family consisting of the three children, *Minnie, Louise,* and *Charles;* that the husband died in 1879, and the testatrix and her family continued to live on and operate the farm, the same apparently being the separate property of the testatrix; that *Charles* married in the year 1884, being then twenty-two years of age, his sisters being a little older; that *Charles* continued to help manage the place, although living with his wife about one mile away, until the year 1886, after which time he ceased to visit his mother or do anything for her, on account of difficulties which seemed to have arisen between his wife and his sisters; that the testatrix and her daughters continued to live on the farm and work it; that the oldest daughter, *Minnie,* was married to one Off, December 30, 1891, and went to live with him on Second street, in the city of Milwaukee, leaving the testatrix and her daughter *Louise* still on the farm; that *Louise* married one Frank Consaul, April 9, 1892, and continued to live at Whitefish Bay, very near her mother's place; that at about the time of the marriage of *Louise* the testatrix sold her farm, and immediately after said marriage

went to *Minnie's* house, in the city, to live, and was given
a room there, and continued to make it her home until her
death, frequently making visits to *Louise* at Whitefish Bay;
that on February 6, 1892, the day on which the will was
executed, she was still living at Whitefish Bay, but was vis-
iting at her daughter *Minnie's*, in the city; that at some time
during the day she left *Minnie's* house alone, and went to
the house of a near neighbor, one Sinz, and inquired of him
where she could get a will drawn, and Sinz took her to the
office of one Pittelkow, a notary public, who drew the will
in question under her direction, the same being properly
executed, and, when drawn, she gave it to Sinz to deposit
with the county judge, which he did; and that it remained
on deposit until the death of the testatrix.

From the dates given, it will be seen that the testatrix
was fifty-four years of age when the will was made. There
was much testimony to the effect that she was in good
health when the will was drawn, and remained so for some
years afterwards, sometimes walking from the city to her
daughter's house at Whitefish Bay. The contestant aban-
doned the claim of incompetency, and rested solely on the
claim of undue influence on the part of the daughters. As
to this claim there were no witnesses who testified to hav-
ing seen any act or word on the part of either daughter to
her mother which indicated duress or undue influence, but
the contestant rested solely on the supposed presumption of
undue influence arising from the fact that the testatrix lived
with one of the chief beneficiaries when the will was made,
and on certain statements alleged to have been made by the
testatrix at the time the will was made and afterwards.
The principal witness upon this line was the witness Sinz,
who went with the testatrix to the office of the notary to
have the will drawn. He testified: That he knew the tes-
tatrix in her lifetime. That he lived very near to *Minnie's*
house, and that on the 6th day of February, 1892, she came

to his house alone, crying, and said she could show the black and blue spots that her daughter (that is, *Minnie*) gave her. "That her oldest daughter wanted to have her property,— sign it over to her two daughters. 'She is so hard on me! She wants my money and my little property,— the two of them; and the son, they say he has got enough. I can't stay there.' And then she began crying again, and asked me if I would go with her to a notary public, and I went with her; and when I went two blocks she stopped and said: 'Oh, I dassent do it. My son done more for me than the girls. But, if I want to stay with her, I have to do it. I dassent go home. I am afraid of my life if I don't do it.' And she told me the oldest daughter pounded her." Several other witnesses testified, in substance, that after the will was drawn the testatrix told them that she had made a will disinheriting her son, and she did it because she was afraid of her daughters; that they slapped her and illtreated her, and would not treat her well if she did not disinherit her son.

The jury found that undue influence was established, and the court made findings to the effect that the circumstances were such as to raise a suspicion of fraud and undue influence on the part of the daughters to the deceased, which suspicion or presumption had not been removed; and thereupon the court refused probate to the will, and adjudged it to be void, and reversed the judgment of the probate court. From this judgment the daughters appeal.

For the appellants the cause was submitted on the brief of *J. E. Wildish.*

For the respondent there was a brief by *Nath. Pereles & Sons*, and oral argument by *G. D. Goff*. They contended, *inter alia*, that the statements made by the testatrix to the notary at the time the will was drawn are admissible as part of the *res gestæ*. 2 Jones, Ev. §§ 347, 351, 493; 1 Underhill, Wills, 227, § 161; *Waterman v. Whitney*, 11 N. Y. 157;

Best, Ev. (Chamberlayne's ed.), 446, note; *Comm. v. Mc-Pike*, 3 Cush. 181; *People v. Vernon*, 35 Cal. 49; *Fifield v. Richardson*, 34 Vt. 410; *Little v. Comm.* 25 Grat. 921; *Shailer v. Bumstead*, 99 Mass. 112; *Elmer v. Fessenden*, 151 Mass. 361; *Mutual L. Ins. Co. v. Hillmon*, 145 U. S. 285, and cases cited.

WINSLOW, J. By the judgment in this case the deliberately executed will of a person of full age, sound mind, and fairly good health is set aside on the ground of undue influence, without a shred of direct evidence from any person that any such influence was exerted. The only evidence which, under any view of the case, can be claimed to justify the judgment, is the evidence of several witnesses to the effect that the testatrix stated, previous to the execution of the will and afterwards, that her daughters illtreated her and that she was obliged to make the will as she did because she was afraid of them. Can the judgment be supported on such evidence alone ? The answer to this question must be in the negative, both upon well-settled principle and authority. Upon such an issue there are two facts to be proven by the contestant: first, that the undue influence was in fact exerted; second, that it was successful in subverting and controlling the will of the testator. Upon the latter question evidence of the statements of the testator, made either before the will was made or after, and which tend to throw light on the condition of his mind, is admissible, upon very familiar principles; but as to the first question the evidence of such statements is plainly merely hearsay. Upon this question it is said in 2 Jones, Ev. § 493: Such declarations " are admissible only for the purpose of proving the condition of the testator. They afford no substantive proof of fraud, duress or undue influence, and are admissible for no such purpose." Mr. Schouler says with regard to such declarations made by the testator, whether

before or after the execution of the will (Schouler, Wills [2d ed.], § 243):

" They are admissible chiefly to show his mental condition, or the real state of his affections; and they are received rather as his own external manifestations than as evidence of the truth or untruth of facts relative to the exertion of undue influence upon him. *They may corroborate, but the issue calls for its own proof from the living.*"

Such being the law, it is very evident that the fact of undue influence was not proven in this case, because there was not even a scintilla of direct or substantive proof that such influence ever was exerted by either of the beneficiaries. The will was executed by the testatrix while in usual physical and mental health. She was not an old lady, nor was she dependent upon her children for support. It is true that her husband was dead, and that she was estranged from her son, and when the will was executed was living at her own home with one of her daughters, and frequently visited her other daughter; and the trial court seems to have concluded from these facts that a presumption of undue Influence had arisen, which threw the burden of proof upon the daughters to rebut the same, which burden had not been lifted. Here, also, the trial court seems to have been in error. It is not the law that, whenever a deed or a will is made by a party in favor of one child to the prejudice of others, a presumption of fraud arises from that fact alone, even if the parent be living with such favored child. In order to set aside such a deed or will on the ground of fraud, proof is necessary on the part of the plaintiff or contestant in the first instance in all cases. He may discharge that burden by going on and proving affirmatively the facts showing undue influence, or he may discharge it by showing a state of facts from which *prima facie*, without direct proof of the undue influence itself, a presumption thereof will arise, in which latter case the burden of proof then shifts and the beneficiary of the conveyance or will must show that there was no fraud in

fact.   The facts which may be shown, and which will arouse
this presumption of fraud, manifestly cannot be the same in
all cases.   Facts which might seem very suspicious with
reference to a deed or conveyauce, such as secrecy in its
execution and custody, may have very little weight as to a
will, which we all know is usually made with secrecy and
is rarely published to the world.   With regard to a volun-
tary conveyance of the entire property of an aged person,
this rule was stated in *Doyle v. Welch,* 100 Wis. 24, as the
result of the authorities in this court:

"Where a voluntary conveyance is made by an aged per-
son of his entire property, without consideration, to one who
stands in a position of trust and confidence to him, under
circumstances of secrecy, the burden of proof is on the
grantee to show that the conveyance was untainted with
undue influence or fraud."

In *Fox v. Martin,* 104 Wis. 581, which was a will contest,
the universal tendency of testators to keep their wills secret
was recognized, and it was said, in effect, that " mere secrecy,
standing alone, creates no presumption of fraud in the mak-
ing of a will;" and the following sentence was quoted ap-
provingly from a previous quotation in *Disch v. Timm,* 101
Wis. 179: "Where interest, opportunity, and a disposition
to influence a testator improperly are shown, a presumption
of undue influence arises."   The conclusion which is prac-
tically reached in *Fox v. Martin, supra,* with reference to
wills is, in brief, that in order to raise the presumption of
undue influence, which throws the burden of proof on the
beneficiary, there must be shown a subject unquestionably
susceptible to undue influence, either as the result of old
age, mental weakness, or both; also some clear evidence of
opportunity, and a disposition on the part of the beneficiary,
to exercise such influence.   When these facts are shown to
exist, and especially when they exist with other facts out of
the usual course of business transactions of such a nature,
the presumption will arise which will put the beneficiary to

his proof of good faith and freedom from undue influence.. Whether the testimony shows these preliminary facts with sufficient clearness and certainty is a matter to be decided by the trial court.

In the present case it is enough to say that the requisite facts to raise the presumption were not shown. The testatrix executed her will at a notary's office, whither she went at her own will, without the presence of any beneficiary. The beneficiaries do not appear to have known that she was about to execute it. The testatrix was not aged, nor mentally incompetent, nor feeble, but in good health. Her son whom she cut off, had not spoken to her for years. The will was a natural one, under the circumstances. While the beneficiaries doubtless had an interest in having such a will made, the evidence entirely fails to show that they had any disposition to influence the testatrix improperly, or that the subject was one susceptible to undue influence. In the absence of these essential facts, the presumption did not arise,. and the will should have been admitted to probate.

*By the Court.*— Judgment reversed, and action remanded to the county court of Milwaukee county with directions to admit the will to probate and for further proceedings according to law.

On January 28, 1902, the mandate was modified so as to read as follows: Judgment reversed, and action remanded to the circuit court for Milwaukee county with direction to affirm the judgment of the county court and for further proceedings according to law. Appellant's costs in this. court to be paid out of estate.