MEYER, Administrator, Appellant, vs. ARENDS and others, Respondents.

*December 16, 1905—January 9, 1906.*

*Gifts by parent to children: Revocation of will: Undue influence: Mental capacity: Evidence.*

1. The evidence in this case is *held* to sustain findings of the trial court that the disposition and gifts of his property by the father of the parties in his lifetime and the revocation and destruction of a will previously made by him were all his free and voluntary acts, done without duress or undue influence exercised by any one, and that he was at the time of sound mind.

2. The mere fact that property of a decedent was not equally divided by him between all his children raises no presumption of undue influence, even though he was living with the favored child.

3. Upon the question whether undue influence had been exercised to induce a parent to favor certain of his children in the disposition of his property, evidence as to the general disposition of one of such children "with regard to being active, exerting influence" was properly excluded.

APPEAL from a judgment of the circuit court for Ozaukee county: JAMES J. DICK, Circuit Judge. *Affirmed.*

John Meyer, of the town of Fredonia, Ozaukee county, died April 28, 1902, at the age of eighty-two, leaving, him surviving, his widow and the following children as his only heirs at law, namely: The plaintiff *Andrew Meyer,* Michael Meyer, Joseph Meyer, Frank Meyer, Charles Meyer, Elizabeth Eder, and the defendants *Theresia Arends* and *John Meyer.* This action was commenced in August, 1903, by the plaintiff, as administrator of the estate of John Meyer, deceased, against the defendants, a son-in-law, daughter, and son of decedent, to compel an accounting and discovery of property claimed to belong to the estate of John Meyer, deceased, in the hands of the defendants and alleged to have been obtained by them through fraud, and for a delivery of such property to the plaintiff as administrator of said estate. The complaint alleges that in April, 1893, the deceased transferred to his son, Frank Meyer, his farm worth about $6,000 and personal property thereon of the value of about $1,000, Frank agreeing to pay to each of his brothers $150 and to his two sisters $200 each, which sums he paid before the commencement of this action; that deceased, at the time he deeded said farm to Frank, reserved to himself and his wife three rooms in the dwelling house on said farm for the term of their natural lives, and the use of a part of the garden, and took a bond from Frank in the sum of $1,000 to secure himself and wife in the enjoyment of said rights; that after the disposal of said farm to Frank he still had property amounting to about $40,000; that the defendants, for the purpose of getting possession of the money and property of deceased for themselves and preventing the other children from receiving any share thereof, fraudulently entered into a conspiracy to carry out such scheme; that the defendants in pursuance of said scheme induced the deceased to leave the rooms occupied by him on the farm deeded to his son Frank

and go to live with the defendants *John* and *Theresia Arends,*. where he and his wife lived for a few weeks, and thereafter were taken by defendants to live with defendant *John Meyer,*. with whom they remained until April, 1898; that about the last-named date defendants, who exercised undue influence over deceased, and to better accomplish the fraudulent purpose of getting possession of his property without consideration, induced deceased to build with his own money an addition to the dwelling house of defendant *John Arends* at an expense of about $500, and which deceased occupied until his death; that the defendant *Theresia Arends* exercised undue influence over deceased and he became in great fear of her and defendant *John Arends* and their family; that deceased was mentally incompetent to do any business during the month of April, 1902,. and that during said month he had in his possession and belonging to him $20,000 in money, besides other property in the shape of notes, mortgages, and securities; that in April, 1902, and when deceased was mentally incompetent to do any business, the defendants fraudulently persuaded and induced him to make a pretended gift of all his property, money, and securities to them, and that said money and securities were then taken away by defendants; that within two years before the death of deceased the defendants, by means of undue influence and in carrying out their fraudulent scheme, induced deceased to pay out of his money a mortgage amounting to. about $3,500 on property owned by defendant *John Arends;* that by such undue influence said defendants induced deceased to give them other large sums of money or securities, which plaintiff believes to amount to upwards of $5,000; and that all of said property, money, and securities were obtained by defendants as a result of such fraudulent scheme and purpose and by virtue of duress and undue influence. The answer denies the material allegations of the complaint. The case was tried upon the issues raised, and the court found in.

favor of defendants and ordered the complaint dismissed upon the merits with costs. From the judgment entered in favor of defendants this appeal was taken.

For the appellant there was a brief by *P. O'Meara* and *John E. Uselding,* and oral argument by *Mr. O'Meara.*

For the respondents there was a brief by *Simon Gillen* and *Joseph W. Collins,* and oral argument by *Mr. Gillen.*

KERWIN, J. The controlling question on this appeal is whether the findings are supported by the evidence. The court found, in effect, the relationship of parties; the transfer of the farm and personal property by deceased to his son Frank; that decedent reserved a life estate for himself and wife in the dwelling house upon the farm conveyed to Frank; and that the conduct of Frank caused decedent and his wife to abandon the premises in 1897; that they lived with defendant *John Meyer* until the spring of 1898, when they went to live with defendant *John Arends,* where they continued to live until the death of decedent; that defendant *John Arends* erected an addition to his dwelling house for the use of decedent and his wife; that in October, 1897, decedent made a will by which he bequeathed and devised his property to his wife, subject to the payment of a legacy of $1,000 to each of the defendants *John Arends* and *Theresia Arends;* that upon the death of decedent, on application to the county court for the probate of said will, the probate thereof was denied, and a decree entered to the effect that said John Meyer, deceased, after the making of said will, disposed of all his property by subsequent will and that the propounded will was not the last will and testament of deceased, and that deceased during his lifetime revoked said propounded will and died intestate. The court further found that in or about the year 1899 the decedent gave to Michael Meyer $500, to defendant *John Arends* $1,000, to *John Meyer* $1,000, and to Charles Meyer $500, and took their notes therefor providing for the payment

of five per cent. interest annually to the wife of decedent during her lifetime, and that between December 31, 1901, and April 15, 1902, said notes were canceled and given up by decedent; that in 1899 decedent gave $500 to Andrew Meyer, and a note and mortgage for $800 to *John Meyer,* and assigned to defendant *John Arends* a note and mortgage for the sum of $1,037; that on the 31st day of December, 1901, decedent made and executed a last will and testament, whereby he bequeathed to defendant *John Arends* the sum of $3,000 and to *John Meyer* $1,000, bequeathing the residue of his estate in equal shares to all his children other than Frank Meyer; that in December, 1901, he gave to the church $350; that on December 31, 1901, he assigned and delivered to *John Arends* a note and mortgage upon which there was a balance of principal unpaid of $2,200; that on the 31st day of December, 1901, he gave to his daughter Elizabeth Eder $500, she giving a receipt acknowledging her full share of his estate; that on March 2, 1902, he gave to the church congregation $1,000; that on March 14, 1902, he made a codicil to his will, whereby he bequeathed to defendants *John* and *Theresia Arends* $3,000 in addition to the previous bequest in said will, and at the same time an agreement in writing was entered into whereby defendants *John* and *Theresia Arends* agreed to support decedent and his wife during their lives in consideration of the sum of $6,000 so bequeathed in said will and codicil; that in March, 1902, decedent gave Michael Meyer and Andrew Meyer, each, $500; that on April 3, 1902, he assigned other notes and mortgages to defendant *John Arends* and Michael Meyer aggregating $2,441; that on April 3, 1902, he indorsed certain notes of the face value of $3,000 by a commercial indorsement and an assignment with the purpose and intention of thereafter making gifts of said notes to such of his children and others as he might desire, and also assigned two school bonds of the value of $400 each to the defendant *John Arends* and Michael Meyer; that on April 10, 1902, he

gave to defendant *John Meyer* one of said promissory notes so indorsed of the face value of $600, together with $550 in money, and on the 14th day of April, 1902, gave to Charles Meyer $300 in money; that on April 12, 1902, he canceled the names of defendant *John Arends* and Michael Meyer in the assignments of the school bonds, and gave the same and the remainder of the assigned notes, aggregating $3,200, to the defendant *Theresia Arends;* that on the 14th day of April, 1902, he gave the remainder of his money to the defendant *John Arends,* and on the 15th day of April, 1902, after having disposed of his estate, caused the will of December 31, 1901, together with the codicil, to be revoked; that he was at all the times mentioned in the findings of sound mind; that during the time he resided with defendants *John* and *Theresia Arends* all his children had full opportunity to visit, consult, and confer with him without any interference or restrictions whatever by the defendants, or any one else acting for them; that there never was any understanding, connivance, or conspiracy among the defendants, or any of them, to obtain the possession of any of decedent's property; that while each and every of the children of decedent were anxious, ready, and willing to become recipients of the beneficence of decedent, and were advised that he was making large gifts for the purpose of disposing of all his property in his lifetime, none of the defendants ever exercised or attempted to exercise any duress, coercion, or undue influence over him for the purpose of obtaining any of his property; that all the gifts made by decedent were his own free, voluntary acts, and all such gifts were received by the donees and the possession passed at the time; that at the time of decedent's death his surviving widow owned and possessed property consisting of notes payable to her as payee, and notes secured by mortgages payable to herself and deceased, as husband and wife, of the value of $3,949.

If these findings are sustained by the evidence it is very clear that plaintiff failed to make a case against defendants.

We have examined with care the lengthy briefs of counsel on both sides and the proof submitted, and are convinced that there is no such preponderance of the evidence against the findings as would warrant us in disturbing them. On the contrary we are satisfied that all the findings are well supported by the evidence. The proof clearly establishes that it was the will and purpose of the decedent to make a full disposition of his property before his death, and that he did so freely and voluntarily, without any duress or undue influence exercised by any one. This is manifest from the revocation of the last will made in December, 1901, in the presence of several witnesses, and the care exercised by decedent in seeing that it was destroyed, as well as his statements that he desired that all his property should be disposed of during his lifetime. There is ample evidence supporting the finding that defendant *John Arends* built the addition to his own house and permitted the decedent to live there without the exercise of any undue influence on the part of *Arends;* and there is likewise abundance of credible evidence to the effect that all property received by the defendants was given to them by the free and voluntary act of decedent, and that they exercised no undue influence for the purpose of obtaining the same. In fact the whole course of proceedings of the decedent with reference to the disposition of his property shows very clearly that he exercised full control over it uninfluenced by any one until the time of the final disposition of it and the destruction of the last will. The findings to the effect that the last will was destroyed and that decedent died intestate are also fully sustained by the evidence. So, too, the findings to the effect that there was no conspiracy on the part of the defendants to obtain the property of decedent, or any duress or undue influence exercised upon him which induced him to transfer property to the defendants, are fully established by the evidence. The fact that the property of decedent was not equally divided by him among all his children

raises no presumption of undue influence, even though the parent was living with the favored child. *Consaul v. Loennecker*, 112 Wis. 461, 88 N. W. 215. The finding of mental capacity of decedent at the time of making the various gifts and destruction of the will is sustained by several credible witnesses.

Error is assigned because the court sustained an objection to the following question put to plaintiff on redirect examination: "What is the general disposition of your sister *Theresia* with regard to being active, exerting influence?" This was objected to as incompetent and immaterial, and the objection sustained. It was clearly immaterial what the disposition of *Theresia* was with regard to exerting influence; the question was what influence, if any, did she exercise. No error, therefore, was committed in sustaining the objection. Moreover, the exclusion of this evidence, even if admissible, could not have prejudiced the plaintiff. *Bartlett v. Eau Claire Co.* 112 Wis. 237, 88 N. W. 61; *Herman v. Schlesinger*, 114 Wis. 382, 90 N. W. 460; *Kirkland v. Telling*, 49 Wis. 634, 6 N. W. 361. An extended discussion of the evidence would serve no useful purpose. We are convinced that the findings are well supported by the evidence.

*By the Court.*—Judgment affirmed.