ESTATE OF SAWALL: SCHNEIDER, Executor, Appellant, vs. LA FERNINERE and others, Respondents.

*March 11—April 7, 1942.*

266

For the appellant there was a brief by *Bouck, Hilton & Dempsey,* and oral argument by *Franklin McDonald,* all of Oshkosh.

The cause was submitted for the respondents on the brief of *Joseph Witmer* of Appleton.

ROSENBERRY, C. J.   In addition to the facts already stated, the court found that the decedent was—

"by reason of chronic ailments suffering extreme physical and mental weakness, which with the suddenness this business was thrust upon her rendered her totally unable to understand the nature of such instrument or the legal effect thereof; and that she at the time of making such purported will did not have sufficient mental capacity to make the same; that at the time her power to resist improper influence was greatly diminished, leaving her a fit subject for and easily susceptible to undue influence; that Casper Sawall at said time was disposed to exercise undue influence over her to the benefit of himself, and did so to the detriment of contestants.

"That said Casper Sawall continued in the trust and confidence of the deceased in her business dealings; that in furtherance of the scheme of the earlier will to obtain an undue advantage by the exercise of undue influence over the deceased in favor of himself and others against the objectors, said Casper Sawall procured the execution" of the will offered for probate.

The court further found that the situation at the time the first will was executed with regard to the susceptibility of the decedent, continued at the time of the making of the second will and further,—

"that in the year which elapsed between the making of the first and the second wills, the physical health of said Emma Sawall by increasing high blood pressure, had become decidedly worse and that she was then rapidly falling into an extreme physical and mental weakness."

The findings respecting mental incapacity and susceptibility are assailed by the appellant on the ground that it is against the great weight and clear preponderance of the evidence, and that the fact of incompetency and susceptibility are not established by the required necessary clear and satisfactory evidence. The rule is laid down in many cases that incompetency and susceptibility must be established by clear, convincing, and satis-

factory evidence. *Will of Schaefer* (1932), 207 Wis. 404, 241 N. W. 382. It is further held that the burden of proof to establish undue influence is upon the party alleging it, in this case, the objectors. *Will of Emerson* (1924), 183 Wis. 437, 198 N. W. 441.

The contentions of the appellant require us to consider in some detail the evidence. Edward J. Walden, the attorney who drew both wills, described in detail the execution of the will offered for probate. From this testimony, which seems to be uncontradicted, the will appears to have been executed in the manner required by law. No argument is presented upon that question by either party. He testified that at the time she came to his office in February, 1938, to have her first will prepared, she had with her in her own handwriting a detailed list of the way she wanted her property disposed of. He testified at the time of the execution of the second will that she was in full possession of her faculties, that there was no question in his mind as to her competency; that he carefully and fully explained the contents of the will to her; that she thoroughly understood it; that she talked coherently and was in full possession of her mental faculties.

Dr. W. E. Archer, the physician who attended Mrs. Sawall down to some time in March, 1939, and had taken care of her for a year and a half prior to that time, testified that while she was suffering from hypertension with chronic nephritis, which is known as high blood pressure, her mental condition was fairly good, and in his opinion she was competent to know what she was saying.

Clifford Kazzor, Mrs. Ewald Sommers, Mrs. Mary Kimball, Erma Griswoldt, Jessie Cross, Zoa Sawall, wife of Casper Sawall, Casper Sawall, Rosa Konow, Frank Emmons, and Harry DeBruin testified to the effect that they knew the testatrix (some of them had known her for many years); that in their opinion she was competent, had never to their knowl-

edge given any evidence of incompetency, and that she at all times knew what she was doing.

On behalf of the proponents, Mrs. Lillian La Ferninere, a daughter and oldest child of the testatrix, testified that she thought her mother was competent when she signed the deed to her on April 4, 1936. She first noticed that her mother did not know what property she had late in 1939. Mabel Krueger, the second-oldest child, on cross-examination testified:

"I believe she knew what her property was but I don't believe she could make out her will that way;"—

that she joined in petitioning to have a guardian of her mother appointed on June 26, 1939, because she thought her mother could not get around very well. Chester Sawall, the third-oldest child, testified that he did not feel his mother was incompetent to handle her property at the time he signed the deed in 1936.

"I could see that at that time in 1938, she couldn't take care of things and didn't understand."

Mrs. Allen Sawall, a daughter-in-law, expressed no opinion as to her mental condition but that she was physically weak. In the opinion of Allen Sawall, a son, his mother did not understand about her will.

Leona Mauthe, a daughter, testified on behalf of the objectors that she did not think her mother was ever really capable of doing business. She said:

"My mother had a very strong will power. All of this was after she was with me in Kimberly in 1939."

She was recalled and stated that the statement about her mother's will power should have been that she had a strong desire to live. "My mother would deny no one." Raymond Mauthe, the husband of Leona, testified to a series of business transactions.

Most of the testimony offered by the objectors related to what they had done to contribute to the accumulation of the property left by their father; what they had received either on the distribution of the estate or from their mother or their father, and tended to establish the fact that the will did not result in an equal distribution of the testatrix's estate. The brief for respondents is mainly an argument based upon the character of certain business transactions from which inferences are drawn and insinuations are made in an attempt to demonstrate that the mother did not make an equal distribution of her estate for her children from which the conclusion is reached that the mother was therefore incompetent. It is quite apparent that the distribution was not on an equal basis as between the children,—Lillian, Mabel, Chester, Esther, and Leona, the older children, by the will received $250 each, a total of $1,250. Of the younger group, Casper received $2,800, Edwin $2,000, Allen $1,000, Jessie $1,000, or a total of $6,800. It appears from the testimony that some of the children received substantial gifts from their father during his lifetime. It is not disputed that the only substantial difference between the first and second wills is to be found in paragraph 12, already referred to. Upon that basis the 1939 will had the effect of rearranging the residue as between Casper, Jessie, and Allen, and in addition, charged the payment of the $1,250 bequeathed to the older children and other legacies upon the homestead which Casper was to receive if he so elected. The amount of the legacies charged upon it exceeded the appraised value as of July, 1935. There is no proof in the case that suggests that she was not fully competent when the children deeded the property to her in 1936. The findings of the trial court as to her incompetency in February, 1938, read more like an argument than findings of fact. We have read and reread the testimony in this case and it is considered that it falls far short of establishing undue in-

fluence or the incompetency of the testatrix. The evidence offered to establish the contentions of the objectors is not clear, not satisfactory, and the conclusion of the trial court to the contrary is against the great weight and clear preponderance of the evidence. We have not attempted to set out the evidence in full as it would require us to incorporate in the opinion the greater part of the printed case.

Nor do we find any evidence of undue influence. The mere fact that a testatrix prefers one legatee over another is not sufficient to establish undue influence. *Will of Loennecker* (1901), 112 Wis. 461, 88 N. W. 215. The *Loennecker Case* is a much stronger case for the objectors than is the case here. The jury found for the objectors in that case and the trial court confirmed the finding, but this court on appeal reversed the judgment and remanded the case with directions to the trial court to admit the will to probate.

Why elderly people in the distribution of their property generally prefer their younger children to those who are older is not difficult to understand. The older children leave the home, establish homes for themselves, cease to be a charge upon their parents, and it is natural that in the course of time the feeling of responsibility for the younger children should be stronger than it is for those who have been longer away from home. This is not a justification for an unequal distribution of property but it is an explanation. Many wills evidence this tendency among testators.

It is considered that the will was properly and duly executed; that there was no undue influence and that the testatrix was competent.

*By the Court.*—The judgment appealed from is reversed, and the cause remanded with directions to the trial court to admit the will to probate.