Golda STARNES, Shelby Walch, Charles S. Morris, Naomi G. Morris and Bill Morris, Jr., Plaintiffs in Error,

v.

O. P. BARKER and Bonita B. Robinson, Defendants in Error.

No. 38354.

Supreme Court of Oklahoma.

June 9, 1959.

Luttrell & Luttrell, Norman, Hemry & Hemry, Oklahoma City, for plaintiffs in error.

T. R. Benedum, Norman, for defendants in error.

HALLEY, Justice.

George S. Morris homesteaded the Southeast Quarter of Section 22, Township 8 North, Range 2 West of the I.M. in Cleveland County, Oklahoma. He continued to own all of this quarter which was east of U. S. Highway 77 until 1944. This place was the home of George Morris until his wife died in 1943. Mr. Morris and his wife raised three children to be grown, namely Will, Mabel and Golda. Will Morris died January 1, 1948 and left three children, Charles S. Morris, Naomi G. Morris and Bill Morris, Jr. Golda first married a man by the name of Walch by whom she had one child, a son named Shelby. Golda divorced Walch and married a man named Starnes who is her present husband. Mabel married O. P. Barker with whom she lived until her death. They had one daughter named Bonita who married a man named Robinson.

After his wife's death, George S. Morris went to California in April, 1943. He stayed until July 7, 1943, when he returned to Oklahoma and lived with his grandson, Charles S. Morris, in Oklahoma City for about three months when he returned to California. In March of 1944, he returned to Oklahoma to sell his farm which he did to a Mr. Clarence Haskett. Mr. Morris remained in Oklahoma until the 28th of June, 1944, when he returned to California.

Mr. Morris received $6,000 in cash for the farm. He gave $1,000 to each of his

children and $500 to his grandson Charles S. Morris who assisted in consummating the sale to Mr. Haskett.

In 1946 grandfather Morris came back to Oklahoma in April and stayed until the latter part of June when he returned to California. This was his last trip to Oklahoma except for his own burial. His death occurred February 22, 1950.

All of the time that George S. Morris was in California he lived either at the home of his daughter Golda Starnes or his daughter Mabel Barker. Although there is evidence that he divided his time between his two daughters the fact remains that the Barkers bought a home in Ventura, California, so that Mr. Morris would have a room to himself. This was a comfort that he did not have at the Starnes' home. In the latter days of his life, he spent far more time with the Barkers than he did with the Starnes. When he was sick he wanted to go to the Barker home. It is clear that the older daughter Mabel Barker spent more time with her father and gave him more care than the daughter Golda Starnes.

On December 21, 1948, Mr. Morris executed a deed to his daughter Mabel Barker and O. P. Barker, her husband, in which he conveyed 49 per cent of the oil and gas and other minerals, which per cent he had retained when he sold his homestead in 1944. This deed was signed by Mr. Morris in a firm hand. There is no evidence in the record to show that he lacked the mental capacity at the time the deed was signed or that he did not know what he was doing.

Unquestionably his daughter Mabel assisted him in looking after his affairs. She looked after his every want and he appreciated her help.

She did assist in getting him on the rolls for old age assistance and evidently he was entitled to everything he received.

At the time Mr. Morris gave the mineral rights to his daughter and son-in-law there was nothing in the record to show that they were very valuable. About this time it was shown that their value was something in the neighborhood of $750.

We have read the record in this case and we are of the opinion that George S. Morris made the deed in this case to the persons he wanted to have it, namely his daughter Mabel and her husband. There is no evidence that he was overreached. The kindnesses shown him by his oldest daughter and her husband were sufficient consideration for the deed. We think the evidence is clear that this was a value gift.

We are not impressed with the contention that Mabel promised her father that she would divide the income from the mineral rights given her and her husband. She was only a joint tenant in the grant of the minerals and could not bind her husband to any such arrangement. There is no evidence that she ever attempted such.

The plaintiffs and intervenors in their joint brief raise only one proposition and that is that the judgment of the trial court is clearly against the weight of the evidence.

There is no question but that this is a case of equitable cognizance and that it is our duty to weigh the evidence and if we find that the judgment of the trial court is not clearly against the weight of the evidence it is our duty to affirm the trial court. Goldrick v. Roxana Petroleum Co., 74 Okl. 55, 176 P. 932 and Wade v. McKeown, 193 Okl. 415, 145 P.2d 951.

It is also well settled in this jurisdiction that a constructive trust cannot arise from presumption but must be established by clear, unequivocal and decisive evidence. Allen v. Jones, 188 Okl. 546, 110 P.2d 911.

The argument is also made by the plaintiffs and intervenors that there was a confidential relationship existing between Mabel Barker and her father to such an extent that the burden was upon the defendants to show that the transaction between the parent and child was a fair one. Weitz v. Moulden, 109 Okl. 119, 234 P. 583, is cited in support of this position.

We find no fault with this case as applied to the facts therein but we think that the facts in the case at bar do not disclose such a confidential relationship to shift the burden to the donees here. Being a devoted daughter does not in itself in our opinion create a fiduciary relationship. However that may be we are of the opinion that the defendants offered sufficient evidence to show that the deed to Mabel and her husband was free of fraud or overreaching. The evidence was clear that Mr. Morris told friends and acquaintances of the gift. At the time it was made there was nothing to indicate that the gift was anything more than a gift would have been of a small piece of land. The fact it later became valuable does not make fraud. The lawyer that took the acknowledgment had no recollection of anything out of the ordinary in the transaction. In Hamburg v. Doak, 207 Okl. 517, 251 P.2d 510, 514, we said:

"A deed executed by a husband to his wife, apparently on its face for a good and valuable consideration, sought to be canceled on ground of fraud, undue influence, and failure of consideration, the relationship of husband and wife existing between the parties is not, within itself, sufficient to raise a presumption of fraud, undue influence, or absence of consideration so as to cast the burden upon the grantee to show the transaction between them was in good faith."

We also think that Schatz v. Wintersteen, 201 Okl. 660, 208 P.2d 1136, sustains plaintiffs' position.

In 38 C.J.S. Gifts § 34b, this statement is made:

"* * * Gifts to the dominant person in a relation of trust and confidence are not necessarily void; in some cases they would be perfectly natural and proper, and they will be upheld where it appears that they were made freely and voluntarily without the exercise of any undue influence. If the donor was, at the time, of sound mind, and clearly understood the transaction, and exercised a free will in the act, being under no restraint or undue influence, such gift will be supported. The power of a court of equity to set aside gifts between persons in a confidential relationship should be exercised, it has been said, only when manifest justice requires it."

In support is cited Woodbury v. Woodbury, 141 Mass. 329, 5 N.E. 275, 55 Am. Rep. 479; Hesse v. Hemberger, Tenn. Ch. App., 39 S.W. 1063; Rolofson v. Malone, 315 Ill. 275, 146 N.E. 169; Thorndell v. Munn, 298 Pa. 1, 147 A. 848.

In Meyer v. Arends, 126 Wis. 603, 106 N.W. 675, the Supreme Court of Wisconsin held that the fact that the distribution of his property made by a decedent before his death was not equal between all his children raised no presumption of undue influence although he was living with the most favored child. See also 67 C.J.S. Parent and Child § 60c(1) (b).

The plaintiffs and intervenors cite numerous cases to sustain their position but none of them are on facts anything comparable to those here. None have a daughter doing everything she could for her father in the trying years of his life. She gave him an ideal home, took him to places of recreation, his barber, his doctor. He felt that her home was his home. In caring for her father Mabel sustained an injury which may have contributed to her illness. We think it was a case of an appreciative parent endeavoring in some way to repay a dutiful daughter and her husband for the many things that they had done for him.

We further take the position that there is certainly no showing of fraud or overreaching. This is even a stronger case for the daughter than that of Saak v. Hicks, Okl., 321 P.2d 425.

We think that the judgment of the trial court is not clearly against the weight of the evidence and are of the opinion that the evidence sustains the judgment.

The judgment of the trial court is affirmed.